MICHAEL KENT TREXLER, a Disabled Adult by his Father and Guardian, Larry Eugene Trexler, Plaintiff-Appellant, *v.* JOHN L. HUBBARD, M.D., *et al.*, Defendants-Appellees.—MICHAEL KENT TREXLER, a Disabled Adult, by his Father and Guardian, Larry Eugene Trexler, Plaintiff-Appellant, *v.* CHRYSLER CORPORATION, Defendant-Appellee.

Fourth District   Nos. 4—82—0650, 4—83—0261 cons.

Opinion filed October 13, 1983.

Stephen O. Willoughby, of Bennett, Willoughby & Latshaw, P.C., of Decatur, for appellant.

Jerald E. Jackson and Mark E. Jackson, both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellee Decatur Memorial Hospital.

Armstrong, Winters, Prince, Featherstun & Johnson, of Decatur (Evan H. Johnson and Daniel L. Gaumer, of counsel), for appellee Robert R. Kraus.

Craig & Craig, of Mattoon (Richard F. Record, Jr., Michael D. Gifford, and Rochelle A. Funderburg, of counsel), for appellees John L. Hubbard and J. H. Weiner.

Erikson & Davis, Ltd., of Decatur (Garry E. Davis and Theodore E. Paine, of counsel), for appellee Boyd E. Nelson.

LeFevre, Zeman & Oldfield Law Group, Ltd., of Vandalia (S. Gene Schwarm, of counsel), for appellee Fayette County Hospital.

Cassiday, Schade & Gloor, of Chicago (John J. Pappas, Debra K. Marcus, and Timothy J. Ashe, of counsel), for appellee Chrysler Corporation.

JUSTICE GREEN delivered the opinion of the court:

On December 21, 1981, plaintiff, Michael Kent Trexler, brought two suits in the circuit court of Macon County. The suits arose from an occurrence on October 15, 1978, when a van in which plaintiff was riding overturned causing him severe injuries. Plaintiff sought recovery for those injuries. One suit was against defendant, Chrysler Corporation, manufacturer of the van. The tort of defective product was charged. The other suit was against the providers of medical services. They were charged with negligence in treating plaintiff for injuries he received when the van overturned. The circuit court entered summary judgments in favor of Chrysler on March 29, 1983, in one case and judgments on motions to dismiss in favor of the other defendants in September and October 1982 in the other case. Plaintiff has appealed all judgments. The cases have been consolidated on appeal.

The above judgments were based on a release given by Larry Eugene Trexler as guardian for plaintiff pursuant to appointment by the circuit court of Fayette County. The release stated it released Timothy Clayton, the driver of the van, certain named insurance companies "and all other persons, firms, corporations, associations or partnerships" from claims which "now have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries *** and the consequences thereof resulting" from the occurrence when the van turned over. The release did not mention any of the defendants by name.

In asserting that the trial court erred in granting the above judgments based on the release, plaintiff contends: (1) The release was void because, in executing it, the guardian exceeded the authority granted him by the circuit court of Fayette County; (2) granting judgment was improper because plaintiff should have been permitted to show by parol that the parties to the release did not intend to release defendants; (3) the release did not release any party as to any medical malpractice which had not been discovered by plaintiff by the time the release was executed.

All causes of action alleged here arose after March 1, 1978. Accordingly, by the terms of section 1 of "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1981, ch. 70, par. 301), the Act is applicable to the matters alleged here. Section 2 of the Act states:

> "Right of Contribution. (a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the

same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability.

(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor.

(e) A tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement.

(f) Anyone who, by payment, has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full his obligation to the tortfeasor, is subrogated to the tortfeasor's right of contribution. This provision does not affect any right of contribution nor any right of subrogation arising from any other relationship." (Ill. Rev. Stat. 1981, ch. 70, par. 302.)
This legislation bears upon each decision we must make.

■■ Section 2(c) of the Act changes the law by providing that a release given in good faith to one of several persons liable "in tort arising out of the same injury" releases only the person or entity to whom the release is granted unless the terms of the release provide for the release of others. Previously, the release of one person, liable in the foregoing manner, released all others liable in tort arising from the same injury unless rights against others were expressly reserved. (*Porter v. Ford Motor Co.* (1983), 96 Ill. 2d 190, 449 N.E.2d 827.) Under prior law a mere release of Clayton by the guardian would have released all of the defendants. *Alberstett v. Country Mutual Insurance Co.* (1979), 79 Ill. App. 3d 407, 398 N.E.2d 611.

The provision of the release purporting to discharge "all other persons, firms, corporations, associations or partnerships" was broad enough to include all defendants. However, plaintiff maintains that its breadth exceeded the authority granted the guardian by the circuit court of Fayette County when the guardianship estate of the ward was being administered.

Pertinent portions of the record of the circuit court of Fayette County concerning the administration of the guardianship of Michael Kent Trexler were before the circuit court of Macon County in ruling upon the judgments on appeal here. That record showed that on January 29, 1980, the guardian petitioned the court for authority to make a settlement on behalf of the ward. The petition alleged that: (1) The ward had "*a* cause of action against Timothy Clayton," and (2) "[a] settlement of $100,000 [had] been offered." (Emphasis added.) The guardian sought "leave to settle *the* cause of action for the sum offered." (Emphasis added.) In ruling on the petition, the court order directed that:

> "1. *The* cause of action be settled for $100,000 and, upon receiving that sum, the guardian execute and deliver to *the* party against whom *the* cause of action lies a release and discharge from *all liability* or covenant not to sue on account of the injuries." (Emphasis added.)

▪ Every reference to the matter to be settled in the petition and order referred to the phrase "cause of action" in the singular. However, the order did authorize that a release be given to "the party against whom the cause of action lies," and that it be such as to discharge that person "from all liability." We conclude that use of the phrase "all liability" indicated an intent on the part of the court to authorize the guardian to give a discharge of sufficient breadth to release as many people as necessary to prevent Clayton from having liability, directly or by way of claim for contribution, arising from the occurrence.

▪ If the release of Clayton was obtained by him in good faith, other persons liable for the injuries to plaintiff would be barred from seeking contribution from him by the provisions of section 2(d) of the Act. The release of him alone would not, of itself, prevent other tortfeasors from claiming the release was not obtained in good faith and seeking contribution on that basis. Thus, to release Clayton from "all liability" it was necessary to release other potential tortfeasors involved who might be able to obtain contribution from him under section 2(a) if the release was found not to have been given in good faith. Chrysler as a potential joint tortfeasor was such an entity. A release

of Chrysler was necessary to protect Clayton from all liability.

■■ The question of the potential liability for contribution Clayton might have to providers of the medical services is a more complicated question. Any liability that Clayton or Chrysler had to plaintiff would include liability for plaintiff's original injuries and also that for aggravation of those injuries arising from negligence of the medical service providers. (*Tidwell v. Smith* (1960), 27 Ill. App. 2d 63, 169 N.E.2d 157.) On the other hand, the liability of the medical service providers would extend only to the damages arising from the aggravation of the injuries. (Prosser, Torts sec. 52, at 320-21 (4th ed. 1971).) As Clayton's liability could have included liability for aggravation of the injuries, it appears that any medical provider, held liable to plaintiff in a subsequent suit, could bring action against Clayton contending his release was not taken in good faith and requesting contribution. No such case has been called to our attention, but the theory of contribution incorporated in the legislation seems to permit such recovery. For a representative to give a release eliminating the possibility of that type of suit is consistent with the granting of a release from all liability.

■■ We conclude that the guardian had authority to release all defendants to the two lawsuits.

We consider next, plaintiff's contention that he should have been permitted to show by parol that the parties to the release did not intend to release anyone other than Clayton and his insurers. Plaintiff recognizes that ordinarily, absent ambiguity, a party to a release has not been entitled to introduce extrinsic evidence to vary the terms of a written instrument operating as a release. He maintains that he should have been permitted to do so here because: (1) With the adoption of legislation for contribution among joint tortfeasors, the old rule should be abolished; and (2) in any event, defendants were strangers to the release. The two theories are related.

Plaintiff maintains that one reason why parol evidence should have been admitted is that an alleged tortfeasor is now less likely to have intended to obtain a release for others because, under section 2(d) of the Act, a release of himself is sufficient to also protect himself from claims by others for contribution. However, as we have explained, the party obtaining the release is still subject to claims that the release was not granted in good faith. Moreover, the person taking the release has incentive to obtain releases of as many people as possible because his rights to contribution are limited by section 2(e) to others whose liability to the injured party has been discharged by the release.

Plaintiff cites cases from other jurisdictions to show that the modern trend is to permit the release of one tortfeasor to release others only when that is the intention of the parties and to permit the introduction of extrinsic evidence to show the intent. A logical reason to permit the introduction of the extrinsic evidence was to change the harshness of the common law rule that the release of one joint tortfeasor released all joint tortfeasors even though the release did not so state. (See 3 Corbin, Contracts sec. 596, at 576 (1960).) Section 2(a) of the Act has abolished the common law rule in this State.

In a series of cases deciding Illinois law, courts have held that when the question arises as to whether a release discharges a stranger to the release from liability, the parol evidence rule does not prevent the introduction of extrinsic evidence to show whether the parties to the release intended to discharge the stranger. The series began with *O'Shea v. New York, C. & St. L. R. Co.* (7th Cir. 1901), 105 F. 559, where an injured party was permitted to show by extrinsic evidence that a release he gave to one alleged tortfeasor was intended to be a covenant not to sue, and thus not a bar to suit against another alleged tortfeasor who was a stranger to the release. Then, in *Gore v. Henrotin* (1911), 165 Ill. App. 222, the stranger was permitted to show by parol that the parties intended it to be discharged of liability. The same holding was made in *Reams v. Janoski* (1932), 268 Ill. App. 8, and in *Essington v. Parish* (7th Cir. 1947), 164 F.2d 725. The *Essington* court cited *Parmelee v. Lawrence* (1867), 44 Ill. 405, for the rule that the essential element in determining the meaning of a release was to interpret the language of the instrument considering the circumstances under which it was executed.

■ The supreme court has never held that the parol evidence rule is not applicable when a stranger to the execution of a release of one of several alleged tortfeasors pleads that release as a defense to a suit by the party granting the release. It recently decided a case where such a release was pleaded in *Porter v. Ford Motor Co.* (1983), 96 Ill. 2d 190, 449 N.E.2d 827. The common law rule in regard to the release of one such tortfeasor was applicable to the case. The plaintiff requested the court to consider that at the time the release was given, the party obtaining the release was the only defendant in the litigation, and the plaintiff had not then considered suing the stranger, Ford Motor Company, which subsequently pleaded the release. As the release clearly made no reservation of rights against other tortfeasors, the court held that the document should be considered without reference to extrinsic circumstances. The court stated that *Parmelee* did not require it to do otherwise.

Although the *Porter* court did not mention the parol evidence rule, its holding is inconsistent with the philosophy of the cases that would have permitted the introduction of parol evidence because Ford Motor Company was a stranger to the release it pleaded. There the court would not consider extrinsic evidence to interpret the release which discharged the defendant seeking to use it only by operation of law. There was no expressed intent on the face of the document to release that defendant. Here the court would not permit use of extrinsic evidence to explain the release which expressly granted release from liability to persons in the category of the various defendants. Use of parol evidence here would only have been for the purpose of varying the expressed intent of the parties. There is even less reason to permit the use of extrinsic evidence to interpret a release, clear on its face, than there was under the modified common law rule in force in *Porter*. The cited appellate and Federal decisions are not binding on us. We do not follow them. Rather, we follow the rule we deem to have been implied in *Porter*.

The possible existence of parol evidence to vary the terms of the release in question did not prevent the trial court from properly granting judgments to defendants.

Finally, plaintiff's contention that the release should not be taken as a release of the medical providers for negligence not discovered when the release was executed is not supported by any indication in the record that any particular act of negligence was discovered after the release. No such discovery is specified in plaintiff's brief. Nothing in the complaint against the medical providers indicates that the negligence could not have been discovered prior to the execution of the release. The thrust of plaintiff's argument seems to be that, under the new legislation on contribution, the acts causing the original injury and subsequent conduct aggravating the injury should be treated as giving rise to separate causes of action. We see no reason why this should necessarily follow. If plaintiff's theory was adopted, the rule that the original tortfeasors are liable for subsequent aggravations of the injury resulting from negligent treatment would be abolished.

We disagree with plaintiff's contentions.

For the reasons stated, the judgments of the circuit court of Macon County are affirmed.

Affirmed.

WEBBER, P.J., and MILLER, J., concur.