**ESSINGTON v. PARISH.**

**No. 9037.**

Circuit Court of Appeals, Seventh Circuit.

Nov. 20, 1947.

Rehearing Denied Dec. 18, 1947.

Ralph F. Huck and Perry M. Chadwick, both of Chicago, for appellant.

Otis F. Glenn, Raymond G. Real, Otto W. Barnes, Irving Herriott and W. Ward Smith, all of Chicago (Raymond G. Real, of Chicago, of counsel), for appellee.

Before MAJOR and KERNER, Circuit Judges, and BRIGGLE, District Judge.

KERNER, Circuit Judge.

Plaintiff sued Parish and others to recover damages alleged to have been suffered by Missouri-Kansas Pipe Line Company (hereinafter called Mo-Kan) through various acts of negligence, fraud and mismanagement of Mo-Kan by Frank P. Parish, Ralph B. Mayo, Ralph G. Crandall and others. Parish filed an answer and a counterclaim. By the counterclaim he sought to enjoin the prosecution of plaintiff's suit. He set up three affirmative defenses: (1) that there had been an executed accord and satisfaction between plaintiff and defendant with respect to the subject matter sued upon; (2) that plaintiff had entered into agreements with others which by operation of law amounted to a release of the cause of action against defendant; and (3) that a suit instituted by Mo-Kan in the District Court of the United States for the Southern District of New York constituted a bar to the maintenance of this action. The master to whom the cause was referred to take proofs and report only on the issues raised on the affirmative defenses, overruled these defenses. The court overruled defendant's exceptions to the master's report, adopted the master's findings of fact and conclusions of law, and entered a decree dismissing defendant's counterclaim. To reverse the decree, defendant appeals.

First. The controlling facts: Mo-Kan, a Delaware corporation, owned natural gas properties in Texas, and in June, 1930, had under construction a pipe line which was to transport the gas from Texas across certain States into Indiana. Mo-Kan was unable to complete the pipe line and on March 18, 1932, receivers were appointed for Mo-Kan by the Chancery Court of the State of Delaware. In 1935 defendant opened negotiations with the Detroit City Gas Company for the purpose of extending the pipe line from its then terminus in Illinois to Detroit, Michigan. As a result of the negotiations a contract was entered into providing for the purchase of natural gas by Detroit City Gas Company. Following the execution of this contract, negotiations were carried on by defendant looking toward a settlement of various existing controversies between Mo-Kan and Columbia Oil and Gasoline Corporation. February 1, 1936, a settlement agreement was reached between these two companies, as a result of which Mo-Kan received $300,000 in cash and 324,326 shares of the Panhandle Eastern Pipe Line Company and became solvent. Defendant claimed that his efforts were largely responsible for bringing about both the execution of the Detroit City Gas contract and the settlement between Mo-Kan and Columbia, for which he was entitled to receive remuneration. In a hearing on September 11, 1936, before the Chancellor of the State of Delaware, defendant testified that during the period of this work he had hoped that there might be some compensation for this service, but that in analyzing it he had concluded that the services were not rendered solely for the purpose of compensation. In testifying before the master in this case, he stated that he preferred not to file a claim for these services, but if plaintiff's suit was going to be pressed, the expense of defending it would be so great he would be forced to file a claim. Defendant, however, never did file a claim for this service.

On May 21, 1932, plaintiff was appointed receiver of Mo-Kan by the District Court and on August 15, 1935, he filed the instant suit. July 31, 1936, defendant offered to settle plaintiff's cause of action against him. In the written proposal defendant stated that he had a claim against Mo-Kan for $21,758.30 for salary earned prior to the receivership and that he had expended out-of-pocket money and time in an attempt to rehabilitate Mo-Kan. He also stated that the Delaware court receivers were willing to recommend the allowance of $21,000 in

partial payment of his out-of-pocket expense if an adjustment of the instant case could be effected, and concluded his proposal thus:

"(1) I will waive and withdraw my claim of $21,758.30 filed in the Delaware receivership.

"(2) I will request no allowance in either of the receiverships for compensation or for expenses other than in the sum of $21,000 as above set forth for my personal services in connection with obtaining the Detroit contract or the settlement with Columbia.

\*　\*　\*　\*　\*　\*

"On condition that you execute and deliver to me a valid and legal covenant not to sue on any of the causes of action alleged in your bill or in the bill filed by plaintiffs in the action for appointment of a receiver. And, further conditioned upon the Delaware court approving the agreement as herein outlined, including the allowance for expenses mentioned."

On August 14, 1936, plaintiff filed a petition in the District Court for authority to accept defendant's proposal and the court entered an order authorizing plaintiff to execute the "agreement of settlement and the delivery of said covenant not to sue to be conditioned upon the approval of said agreement by the Chancery Court of the State of Delaware, and upon the allowance by that Court to the said Frank P. Parish of out-of-pocket expense expended by him in connection with the Detroit and Columbia transactions, said claim for expense not to exceed the sum of Twenty-one Thousand Dollars ($21,000.00)." After the entry of this order, plaintiff transmitted a copy of the order to the Delaware receivers. September 8, 1936, the Delaware receivers filed a petition in the Delaware court to which they attached the settlement proposal, the order of approval of the District Court, and a statement of the expenses which defendant had submitted to them, and recommended that the court approve the settlement. The Delaware court, on September 14, 1936, refused to approve the settlement.

On January 26, 1937, defendant filed a petition in the Delaware court by which he sought a hearing on his salary claim which he had permitted to be disallowed through want of prosecution. In this petition he prayed that his claim for earned salary for $21,758.30 be reopened and held pending the final disposition of the asserted claims against him in this case. Nothing was ever done about that petition; it appears, however, that thereafter, up to September or October, 1937, attorneys for plaintiff and defendant had several discussions regarding a settlement, but none was ever reached.

It is upon this state of the record that defendant bases his defense of accord and satisfaction. He insists that he surrendered his claim for earned salary and that he waived all claim to compensation for services in the Detroit matter and the settlement between Mo-Kan and Columbia, and that, accordingly, he furnished all of the consideration which he was called upon to furnish under the terms of the settlement.

The master found that no effort was made to submit proof in support of defendant's claim for $21,758.30 before the Delaware court because the parties believed that a settlement was about to be effected and that as a part of the settlement this claim was to be withdrawn, but that the claim was still pending before the Delaware court; and with respect to defendant's claim for compensation in connection with Detroit City-Columbia matters, he found that it was the intention of the parties that if the Delaware court approved the settlement some sort of a written release or waiver of claim against Mo-Kan should be executed by defendant, and that plaintiff's authority to make the proposed settlement with defendant was expressly conditioned upon the approval of the settlement by the Chancery Court of the State of Delaware and that this approval was never obtained.

Under the evidence in this case, the question of whether there was an accord and satisfaction was a question of fact. Our examination of the record has convinced us that there was substantial evidence warranting a finding that plaintiff was authorized but not directed by the District Court to enter into the proposal of settlement offered by defendant, provided the settlement was approved by the Delaware court; that plaintiff did not in fact accept the proposal of settlement; that the Dela-

ware court expressly refused to approve the proposed settlement; that after the refusal of the Delaware court to approve the proposed settlement, defendant and plaintiff recognized it could not be accepted and consummated; and that there was no accord and satisfaction. Under these circumstances we must accept the findings, Rule 52(a) of the Rules of Civil Procedure, 28 U.S. C.A. following section 723c, and hold that defendant has failed to prove that an accord and satisfaction was ever executed.

Second. There is no dispute as to the facts concerning the defense of release, and the only question is what inferences might justifiably be drawn from the evidence.

In July of 1936, in the instant case, plaintiff filed petitions setting out that Mayo had a claim for $25,000 for services and that the firm of Nicholson, Crandall & Snyder, of which Ralph G. Crandall was formerly a member, had claims against the receivership estate in Delaware; that Mayo would release his claim for which the Delaware receivers and plaintiff would deliver to Mayo a general release of all claims which they, as such receivers, might have against him, except the claims sued upon in this case; that with respect to the claims sued upon in this case, plaintiff and the Delaware receivers would execute to Mayo a covenant not to sue; that as to Crandall, the petition recited that the parties had entered into a stipulation which provided that subject to court approval, Nicholson, Crandall & Snyder's claims would be allowed, but for less than the amounts claimed, and that in consideration thereof, plaintiff and the Delaware receivers would execute and deliver to Crandall a covenant not to sue upon any of the matters set forth in the complaint.

On July 15, 1936, the District Court entered an order authorizing plaintiff to execute the release and covenants not to sue, and thereafter in November, 1938, plaintiff executed and delivered to Mayo two documents. One was a release and discharge of all claims which plaintiff or Mo-Kan had against Mayo, except, however, the claims asserted in this case. The second instrument refers to the pendency of the

instant case, recites that the receivers will not continue to prosecute the complaint, and contains the following provision: " * * * and that these present may be pleaded by the said * * * Ralph B. Mayo * * * as a defense to any action or other proceeding now pending or which may be brought, instituted or taken by the said * * * [Receivers] * * * against the said * * * Ralph B. Mayo * * * in breach of this covenant." As to Crandall, plaintiff's request for authority to execute and deliver to Crandall a covenant not to sue was granted, and the covenant not to sue was executed.

The master found as a fact that it was not the intention of plaintiff, Mayo or Crandall that the release of Mayo's claim against Mo-Kan, the acceptance of a lesser amount by Crandall on account of his claim, and the execution of the release and the covenants not to sue be given and accepted in satisfaction of their (Mayo's and Crandall's) liability for the wrongs complained of in the instant case.

In seeking a reversal of the decree, defendant calls attention to the fact that the allegation of plaintiff's complaint is that he and Mayo and Crandall were joint tortfeasors, and contends that by the instruments Mayo and Crandall were discharged and released from the very claims sued upon. He insists that the instruments show "a settlement and satisfaction" and should be construed as releases and not as covenants not to sue. He cites cases of other courts than Illinois in which such a principle has been applied. He also cites City of Chicago v. Babcock, 143 Ill. 358, 32 N.E. 271; Chicago & Alton R. v. Averill, 224 Ill. 516, 79 N.E. 654; Aiken v. Insull, 7 Cir., 122 F.2d 746; and Bryan v. Creaves, 7 Cir., 138 F.2d 377, all involving Illinois law, which he claims support his contention.

On the other hand, plaintiff maintains that he did not release either Mayo or Crandall with respect to the causes of action sued upon. He asserts that he merely gave Mayo and Crandall covenants not to sue them on such causes of action, and that the doctrine of release of one of several joint tort-feasors is not applicable because of the existing factual situation.

While it is true that the great weight of authority supports the doctrine that a covenant not to sue one of several joint tort-feasors does not operate as a release of the others from liability, Matheson v. O'Kane, 211 Mass. 91, 97 N.E. 638, 639, 39 L.R.A.,N.S., 475, Ann.Cas.1913B, 267, we experience no hesitation in agreeing with the master and trial judge that the Illinois case law is not as clear as it might be and that with respect to joint tort-feasors, Illinois follows the strict common law rule that a release given to one joint tort-feasor operates to release all, but only to a limited extent. The Illinois cases hold that if it was the intention of the parties that payment made by one of the joint tort-feasors be accepted in satisfaction of the cause of action, then the transaction is a release regardless of the form of the instrument. See City of Chicago v. Babcock, supra, and Reams v. Janoski, 268 Ill. App. 8.

However conflicting the authorities may be in respect to the proper construction of the instruments here involved, we think the law is now settled in Illinois that the substance of the agreement is the controlling factor, and that the essential fact to be determined is "what was the intention of the parties." Illinois looks to all the circumstances to determine whether or not the transaction was intended as, and was in substance, a settlement and satisfaction, or merely an agreement not to sue, and that, as was held in City of Chicago v. Babcock, supra, 143 Ill. 367, 32 N.E. 271, is a question of fact. The Aiken v. Insull and Bryan v. Creaves cases, supra, are not opposite. In the Aiken case this court held that in substance (actual intent) as well as in form (language employed) the instrument constituted a release, while in the Bryan case, supra, 138 F.2d 377, 378, the agreement recited that they (the parties) were "'desirous of composing and compromising their differences' and that the contract should constitute 'a full settlement of claims between the parties hereto, accruing up to this date'."

In our case, in addition to what we have already related, it appears that on December 3, 1938, one Logan, attorney for the Delaware receivers, sent a telegram to plaintiff's attorney, asking him for his opinion as to whether or not the Mayo instruments would under the Illinois law be proper covenants not to sue. In the telegram Logan stated that delivery of the Mayo documents would not be made before the receipt of the opinion. Real, plaintiff's attorney, on December 5, replied to Logan, stating that the documents constituted proper covenants not to sue and suggested that inasmuch as the law looked to the intention of the parties, the documents be delivered with an accompanying letter confirming the fact that they were intended as a "covenant not to sue" and that such recognition of that intention be obtained from Mayo's attorney. December 13, Mayo's attorney wrote:

"It is our intention that the release is one as to all rights except the cause of action in the Chicago suit [the instant suit] and that the covenant is intended solely as a covenant not to sue and not as a release.

"This letter will serve as my acknowledgement on behalf of Ralph B. Mayo of that understanding."

Before we announce our conclusion on this chapter of the case, it is well to dispose of several incidental questions raised by defendant. It is urged that extrinsic declarations of expressions of intention dealing with the documents were not admissible and could not bind defendant because he was not a party to the Mayo transaction, and that the letter cannot be construed as confirming the intention expressed in the Mayo attorney's letter and its submission is an attempt to create evidence after the Mayo transactions had been completed. In answer to the points urged, it will suffice to say that the parole evidence rule is inapplicable since it applies only in the construction of instruments in actions between the parties to the instrument. Reams v. Janoski, supra, 268 Ill.App. 17, and O'Shea v. New York, C. & St. L. R., 7 Cir., 105 F. 559, 563. And the contentions that the declarations of expressions of intention and that admissions of the attorney were not admissible because defendant was not a party to the Mayo transaction, we think unsound. See Parmelee v. Lawrence, 44 Ill. 405, in which case the court

at page 410 said: "a release, like every other written instrument, must be so construed as to carry out the intention of the parties. This intention is to be sought in the language of the instrument itself when read in the light of the circumstances which surround the transaction. The court which interprets must place itself as nearly as possible in the position of the parties when they acted." And there is no merit in the claim that this is an attempt to create evidence after the Mayo transaction had been completed, since we agree with plaintiff's attorney that the correspondence was not after, but was in the completion of that transaction.

■ In this state of the record and the applicable law thereto, we conclude that no reversible error was committed in the admission of evidence and that the evidence and the inferences reasonably drawn therefrom amply support the finding of the court that the instruments were intended solely as covenants not to sue.

Third. The point urged is that the prosecution of this suit is barred under the doctrine of election of remedies.

■■ Election of remedies is the act of choosing between different remedies allowed by law on the same state of facts, where the party has but one cause of action, one right infringed, one wrong to be redressed. 28 C.J.S. Election of Remedies, § 3. And where a person has two or more remedies for the redress of a wrong or the enforcement of a right and these remedies are based upon inconsistent theories such person is put to an election, and when he has, with full knowledge of the facts, definitely chosen to pursue one remedy he will be bound by his election, Glezos v. Glezos, 346 Ill. 96, 99, 178 N.E. 379. If he has voluntarily chosen and carried into effect an appropriate remedy with knowledge of the facts and his rights, he will not, in general, be allowed to resort afterward to an inconsistent remedy, which would involve a contradiction of the grounds upon which he before proceeded. 18 Am.Jur. p. 130.

In our case it appears that the Delaware receivers filed a prior action in the United States District Court for the Southern District of New York under the Sherman Anti-Trust Law to recover triple damages, upon the theory that one Doherty and the other defendants in that case conspired to raid the market and depress the price of Mo-Kan stock in order to prevent Mo-Kan from obtaining funds with which to construct its pipe line. In 1942 the defendants paid Mo-Kan $200,000 and the case was dismissed. We note here that none of the parties to the instant case was a party in the New York proceeding and we observe again that plaintiff's cause of action is to recover damages from defendant as a director of Mo-Kan through various acts of negligence, fraud and mismanagement.

Because of claimed inconsistencies in the allegations of the two cases, defendant argues that plaintiff is barred from further prosecution of his complaint.

The master and the District Court concluded that the damage sought to be recovered in the New York suit was not damage for the non-receipt of the proceeds of sale of stock of Mo-Kan, but was the damage which Mo-Kan suffered through illegal and tortious conspiracy to prevent Mo-Kan from moving its gas in interstate commerce in competition with the defendants in that suit, and that the facts alleged in the two suits, if proven, would establish that Mo-Kan had suffered two distinct wrongs and that the position taken by the Delaware receivers in the New York suit was not inconsistent with the position taken by plaintiff in this case.

■ We, too, believe that there is no inconsistency between the allegations contained in the two actions. Each is upon a separate state of facts, each creates a different cause of action, each infringes a different right, and each creates a different wrong to be redressed, hence we approve the conclusion reached by the court.

For the reasons stated in this opinion the decree of the District Court is affirmed.