(No. 56282.—

SALLY PODGORSKI PORTER, Special Adm'r, Appellant, v. FORD MOTOR COMPANY, Appellee.

*Opinion filed May 18, 1983.*

Leonard M. Ring & Associates, of Chicago (Leonard M. Ring, Jay M. Smyser and Judith E. Fors, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Tobin and Richard H. Donohue, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

Sally Podgorski Porter brought this appeal from an affirmance by the appellate court of a judgment of the circuit court of Cook County which dismissed her suit as special administrator of the estate of her deceased husband against the Ford Motor Company (Ford). We granted her petition for leave to appeal under our Rule 315 (73 Ill. 2d R. 315).

On October 12, 1974, Arthur M. Podgorski was killed while driving his 1972 Ford Pinto station wagon which was struck by a vehicle driven by Charles Rainwater. The National Bank of Bloomington, as administrator of the estate of Podgorski, filed suit against Rainwater in 1976, charging him with the negligent operation of his automobile. The complaint claimed damages of $325,000. Rainwater carried a $50,000 liability insurance policy issued by the State Farm Insurance Company. In February 1977 the claim was settled for $49,000, and the bank executed an "Administrator's Release" which read in part:

> "KNOW ALL MEN BY THESE PRESENTS, that the undersigned, National Bank of Bloomington, as Administrator of the Estate of Arthur M. Podgorski, deceased, in consideration of the payment of the sum of Forty Nine Thousand and no/100 Dollars ($49,000.00) to me in hand

paid by Charles W. Rainwater and State Farm Insurance Company, the receipt of which is hereby acknowledged, the undersigned does hereby release, acquit and discharge the said Charles W. Rainwater and State Farm Insurance Company and any person, firm or Corporation liable in his stead of any and from all claims of action, causes of action, damages or demand of whatever name or nature in any manner arisen, arising or to grow out of any and all occurrences and especially due to the death of Arthur M. Podgorski, which occurred October 12, 1974 at or near Saybrook, Illinois.

The consideration for this release is the sole consideration therefor, and there is no agreement or promise on the part of the said Charles W. Rainwater and State Farm Insurance Company to do or to omit to do anything or act not herein mentioned and the above consideration is in full settlement of any and all damages to the undersigned arising out of or any claims, in all matters aforesaid mentioned including any claims by the next of kin by virtue of the death of Arthur M. Podgorski.

That the said Charles W. Rainwater and State Farm Insurance Company is paying the sum of Forty Nine Thousand and no/100 Dollars ($49,000.00) as herein set forth, does so in compromise of claim or claims, action or actions, cause or causes of action, damages or demands, not admitting liability on his part."

On October 11, 1978, the suit considered here was filed to recover damages against Ford under the theory of breach of implied warranties of fitness. Ford's motion to dismiss on the grounds that the "Administrator's Release" operated as a bar to any and all claims arising out of the collision on February 9, 1977, was granted. As stated, the appellate court affirmed the dismissal. 103 Ill. App. 3d 848.

The judgment of the appellate court was grounded on the common law rule that a full or unqualified release of one of several joint tortfeasors releases all. (*Wallner v. Chicago Consolidated Traction Co.* (1910), 245 Ill. 148; *Benjamin v. McConnel* (1847), 9 Ill. 536.) The court stated that the language of the release was clear and unambigu-

ous and constituted a full release which was a bar to further legal action. The court noted that "[t]here is no reservation contained in the release or qualified language which would lead us to conclude otherwise." 103 Ill. App. 3d 848, 850.

The only question presented is whether the suit against Ford was barred by the release.

The plaintiff, relying primarily on *Parmelee v. Lawrence* (1867), 44 Ill. 405, and *City of Chicago v. Babcock* (1892), 143 Ill. 358, contends that the appellate court should have focused on the intent of the parties in executing the release rather than looking at the language of the document standing alone. The intent of the parties, the plaintiff contends, was to release only Rainwater and his insurer from liability. The prime indicator of this intention, it is said by the plaintiff, is that "at the time the document was executed, the only defendant in the lawsuit was Rainwater and a claim against Ford had not even been contemplated by the plaintiff."

At common law, the full release of one of several joint tortfeasors released all, even if the release contained an express reservation of rights against the others. (*Rice v. Webster* (1857), 18 Ill. 331; *Benjamin v. McConnel* (1847), 9 Ill. 536; Prosser, Torts sec. 49, at 301 (4th ed. 1971); 4 Corbin, Contracts sec. 931, at 737 n.72 (1951).) This rule was widely criticized and was modified so that if a release contained an express reservation of rights against others it would be interpreted to be a covenant not to sue which would have the practical effect of releasing only the person or persons named in the instrument. (J. Calamari & J. Perillo, Contracts sec. 20–3, at 745 (2d ed. 1977); Williston, Contracts sec. 338, at 710 (3d ed. 1959).) In *Parmelee*, the court stated:

> "If [the instrument executed] is to be regarded as an absolute and unconditional release of [one co-obligor], it must also operate as a discharge of his co-obligors, and the mere fact that, when a release is executed, the par-

ties are ignorant that such will be its legal effect, will not prevent its so operating if executed and delivered unconditionally and without reference to its bearing upon other parties. But a release, like every other written instrument, must be so constructed as to carry out the intention of the parties. This intention is to be sought in the language of the instrument itself when read in the light of the circumstances which surrounded the transaction." 44 Ill. 405, 410.

The plaintiff interprets this language as support for her contention that her claim against Ford is not barred in the absence of a showing that the administrator bank and Rainwater specifically intended that the effect of the document was to release Ford. That interpretation of *Parmelee* is not reasonable.

The court in *Parmelee* stated that whether the party executing the instrument intended it to serve as "an absolute and unconditional release" of one co-obligor or concurrent tortfeasor was the intent to be examined. If "the language of the instrument itself when read in the light of the circumstance which surrounded the transaction" expresses such an intention, the instrument "must also operate as a discharge of his co-obligors" or concurrent tortfeasors whether or not "the parties are ignorant that such will be its legal effect" unless there is an express "reference to its bearing on other parties." See *Pate v. City of Sesser* (1979), 75 Ill. App. 3d 233; *Mitchell v. Weiger* (1977), 56 Ill. App. 3d 236.

Unlike the case before us, the instrument in *Parmelee* contained an express provision that it should in no way "affect my rights or demand against said Parmelee, Gage or Johnson." (44 Ill. 405, 408.) The *Parmelee* court rejected the strict common law rule "in favor of the more reasonable rule, that where the release of one of several obligors shows *upon its face*, and in connection with the surrounding circumstances, that it was the intention of the parties not to release the co-obligors, such intention, as in

the case of other written contracts, \*\*\* shall be construed as a covenant not to sue." (Emphasis added.) (44 Ill. 405, 413-14.) The *Parmelee* holding does not require, as the plaintiff suggests, that a release be construed as a release of only those persons expressly named. Rather, it holds that an unconditional release of one co-obligor releases all unless a contrary intent appears from the face of the instrument.

*Parmelee* concerned the release of co-obligors on a contract, but its rationale is applicable to releases involving joint tortfeasors. (*Pate v. City of Sesser* (1979), 75 Ill. App. 3d 233; *Mitchell v. Weiger* (1977), 56 Ill. App. 3d 236.) In addition to *Parmelee, Pate,* and *Mitchell,* the case of *Holt v. A.L. Salzman & Sons* (1967), 88 Ill. App. 2d 306, cited by the plaintiff, also involved the construction of an instrument which contained an express reservation of rights.

*City of Chicago v. Babcock,* which the plaintiff cites, is also distinguishable. The involved language there read:

" 'It is hereby agreed that no action shall be begun against Joseph LeCardi, by reason of any matters existing at this date, by the undersigned. Given for good consideration.' " (143 Ill. 358, 364.)

The court noted the common law rule that "[a] release to one of several joint tort feasors is a release to all" (143 Ill. 358, 366), but recognized that the questioned language "*on its face,* was simply an agreement or covenant not to sue" (emphasis added) (143 Ill. 358, 366).

We do not have here an instrument which on its face is a covenant not to sue or which contains an express reservation of rights. It is clear from its language that it is a full release. A full or unqualified release as to one indivisible injury given to any of those concurring in its cause releases both joint and independent concurrent tortfeasors. *Artoe v. Navajo Freight Lines, Inc.* (1978), 65 Ill. App. 3d 119.

The plaintiff states "that at the time the document was executed the only defendant in the lawsuit was Rainwater

and a claim against Ford had not even been contemplated by the plaintiff." This indicates of course that the administrator and Rainwater did not specifically intend that the instrument would operate to release Ford, but it also indicates that the payment of $49,000 was accepted, as the instrument states, "in full satisfaction" of the estate's claim. The phrase "in full satisfaction" does not mean necessarily that the plaintiff recovered all he desired or felt he was entitled to by way of damages. It may simply express agreement to accept a given sum in lieu of seeking an additional or larger recovery. Williston described the legal consequence of agreeing that a release is executed in full satisfaction. He wrote: "[W]here two or more persons are liable for the same injury though their tort was not joint, the only question when a release has been given to one, should be: Has the plaintiff obtained full satisfaction, *or what he agreed to accept as such, for his injury?*" (Emphasis added.) (Williston, Contracts sec. 338A, at 725 (3d ed. 1959).) At least as of the time the release here was executed, the estate was willing to and agreed to accept $49,000 in settlement without any expectation of recovering an additional amount from either Rainwater or another. The release, taken in full satisfaction, serves as a bar to further legal action "because all of the plaintiff's injury is compensated for in the eyes of the law and, because of this, those tortfeasors paying for the satisfaction can be said to have paid as well for any damages, if any, caused by nonpaying negligent parties." *Albertstett v. Country Mutual Insurance Co.* (1979), 79 Ill. App. 3d 407, 410.

We need not consider what effect, if any, the provisions regarding releases in "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*) would have had here, since the relevant events in this case preceded its enactment.

For the reasons given, the judgment of the appellate court affirming the circuit court of Cook County's dismissal

of the cause of action is affirmed.

*Judgment affirmed.*

JUSTICE GOLDENHERSH, dissenting:

I dissent. I would reverse the judgment of the appellate and circuit courts and remand the cause for further proceedings.

While it is true that the opinions have not always been consistent, it is clear from an analysis of the cases that this jurisdiction long ago rejected the strict common law rule that a release of one tortfeasor releases all tortfeasors. The rule is well stated in *Essington v. Parish* (7th Cir. 1947), 164 F.2d 725:

> "However conflicting the authorities may be in respect to the proper construction of the instruments here involved, we think the law is now settled in Illinois that the substance of the agreement is the controlling factor, and that the essential fact to be determined is 'what was the intention of the parties.' Illinois looks to all the circumstances to determine whether or not the transaction was intended as, and was in substance, a settlement and satisfaction, or merely an agreement not to sue, and that, as was held in City of Chicago v. Babcock, supra, 143 Ill. 367, 32 N.E. 271, is a question of fact." 164 F.2d 725, 729.

There is nothing to indicate that at the time of the execution of the release it was contemplated, or even suggested, that there might be an action against Ford Motor Company. The briefs fail to suggest how it could have been intended to release a tortfeasor against whom no claim had been suggested or asserted. Furthermore, the document in question contains no all-inclusive language of the type frequently found in releases. It does not purport to release Rainwater, State Farm Insurance Company and "any and all other persons, firms or corporations who might in any manner be liable ***." It releases only Rainwater, State Farm and "any person, firm or corporation liable in his stead ***." This creates at least the possibility that the re-

lease was intended to include only those whose liability derived from Rainwater. There is an ambiguity sufficient to render the intent of the parties a question of fact.

A second rule of law is applicable here. A release is a contract in which, for a consideration, a claimant releases a claim against a tortfeasor. There is nothing in the release which in any manner indicates that it was intended to benefit any other tortfeasor. A long-established rule in this jurisdiction is that a third-party beneficiary of a contract must show an intent on the part of the contracting parties that he be benefited thereby. (*Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44.) The intent here indicated is to limit the benefits to the parties named: Rainwater, State Farm Insurance Company, and "any person, firm or corporation liable in his [Rainwater's] stead."

In my opinion the dismissal was error and the question of the intent of the parties was an issue to be determined by the trier of fact. The case should be remanded to the circuit court for further proceedings.

JUSTICE SIMON joins in this dissent.