**David AVERY, Plaintiff-Appellant,**

**v.**

**UNITED STATES of America, Defendant,**

**and**

**Pacific Drydock and Repair Company, Third-Party Defendant-Appellee.**

**No. 86–2993.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 11, 1987.

Decided Oct. 2, 1987.

Philip R. Weltin and Brian E. Kerss, San Francisco, Cal., for plaintiff-appellant.

Mitchell S. Griffin, San Francisco, Cal., for third-party defendant-appellee.

Before CHAMBERS, SCHROEDER and POOLE, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an admiralty case in which a ship repairman, the plaintiff-appellant David Avery, was injured aboard a U.S. vessel in drydock for repair. Avery brought suit against the United States, and the United States filed a third-party claim against the drydock company, appellee Pacific Drydock & Repair Co. Avery then executed a release against the United States. The principal issue is whether that release, although it did not purport to do so, also released Pacific Drydock by operation of law. The district court held that it did, relying on our decisions in *Twentieth Century-Fox Film Corp. v. Winchester Drive-In Theatre,* 351 F.2d 925 (9th Cir.1965), *cert. denied,* 382 U.S. 1011, 86 S.Ct. 620, 15 L.Ed.2d 526 (1966) (*Fox*), and *Undersea Eng. & Constr. Co. v. ITT Corp.,* 429 F.2d 543 (9th Cir.1970) (*Undersea*). It therefore dismissed the action against Pacific Drydock. It did so reluctantly, expressing its view that this was a "very harsh" result

and "out of step with the rest of the law of the United States." The district court explained, however, that it felt bound by the law of the Ninth Circuit until that law was changed by this court, even though that law appeared inconsistent with the subsequent Supreme Court decision in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971) (*Zenith*).

Where there has been a decision of the Supreme Court that undermines an earlier precedent of this court, we may reexamine that precedent without convening an *en banc* panel. *Le Vick v. Skaggs Companies, Inc.*, 701 F.2d 777, 778 (9th Cir.1983). We now hold that the Supreme Court's decision in *Zenith* disapproved the rule of *Fox* and *Undersea* and that that rule should no longer be followed in this circuit.

## BACKGROUND

Avery, a ship repairman employed by Peterson Metal Fabrication, a contractor, was injured while working aboard a United States government vessel. He brought suit against the United States under the Public Vessels Act, 46 U.S.C. §§ 781 *et seq.*, and the Suits in Admiralty Act, 46 U.S.C. §§ 741 *et seq.*, subject to the provisions of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.*

Pacific Drydock was the prime contractor on the repair contract with the United States. Peterson Metal, Avery's employer, was one of several subcontractors. Plaintiff contends that he was injured while moving a tank of argon gas up a ladder from the ship's refrigerator room to the deck above. He asserts that the hatch cover leading to the deck had been open in a vertical position during his previous trips up the ladder on the day of the injury, but that someone repositioned the hatch at a 45 degree angle to accommodate an air hose run behind the hatch cover. Plaintiff claims that he suffered an injury because the hatch cover was not fully open when he made the ill-fated trip.

After plaintiff filed suit, the United States filed a third-party claim under Fed.

R.Civ.P. 14(c) against Pacific Drydock under general admiralty principles. Pacific Drydock counterclaimed against the United States for contractual and equitable indemnity. Plaintiff had also brought an action in state court prior to his filing the federal action. The state court action has been dormant during the proceedings of the federal suit.

The United States accepted plaintiff's offer of settlement and was dismissed from the case in return for an agreement that each party would bear its own costs. Pacific Drydock then filed its motion to dismiss on the ground that the release of the government released Pacific Drydock as well.

## DISCUSSION

In *Fox* we held that the release of one tortfeasor will release others jointly liable unless the release expressly provides for the retention of rights against the other tortfeasors. 351 F.2d at 930–31. We followed the Third Circuit's decision in *Dura Elec. Lamp Co. v. Westinghouse Elec. Corp.*, 249 F.2d 5 (3d Cir.1957), in looking no further than the words of the release in attempting to ascertain the intent of the parties. *Fox*, 351 F.2d at 930. *Fox* was an antitrust case. The issue next arose in this circuit in *Undersea*, in which we applied the rule of *Fox* to an admiralty case, holding "that the release of one of several joint tort feasors without specifically naming in the release the other joint tort feasors not intended to be released thereby, has the effect of releasing all joint tort feasors not so excluded." 429 F.2d at 551.

One year after our ruling in *Undersea*, however, the Supreme Court handed down its decision in *Zenith*. This case was the second appearance before the Court of complex antitrust litigation involving a division of markets and exclusion of competitors effectuated through "patent pools." One issue in *Zenith* was whether the release of one co-conspirator released another co-conspirator not a party to the original suit and not mentioned in the release. The Supreme Court held that the plaintiff's fail-

ure expressly to reserve rights against the second conspirator did not operate as a release of that conspirator. The Supreme Court rejected the contrary rule, and cited *Fox* as one of the cases adhering to that disfavored rule.

The *Zenith* Court stressed the importance of the intentions of the parties, 401 U.S. at 345, 91 S.Ct. at 810, concluding that "[t]he straightforward rule is that a party releases only those other parties whom he intends to release." *Id.* at 347, 91 S.Ct. at 810. The Court reasoned that a rule requiring explicit retention of rights against co-conspirators "would create a trap for unwary plaintiffs' attorneys." *Id.* Thus, one court has noted that *Zenith* "effectively reverses the leading lower court case on the question, [citing *Fox*] and requires a trial court to find as fact the intentions of the released and releasing parties." *Mustang Oil Co. v. Crown Central Petroleum Co.*, 52 F.R.D. 207, 207 (W.D.N.C.1971).

Although *Zenith* was an antitrust case, it has been interpreted broadly by the circuit courts, so that its holding has not been read as limited to non-parties or to private antitrust actions. *See Gamewell Mfg., Inc. v. HVAC Supply, Inc.*, 715 F.2d 112, 114 n. 4 (4th Cir.1983) (patent infringement action); *Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*, 558 F.2d 1113, 1115–16 (2d Cir.1977) (securities action). Further, the same issue we decide in this case was confronted in the Fifth Circuit, also in the admiralty context, in *Fisher v. Danos*, 595 F.Supp. 461 (E.D.La.1984), *aff'd without opinion*, 774 F.2d 1158 (5th Cir.1985). There, the court stated that under well-established federal law "[a] release of one joint tortfeasor is not a release of others unless the party signing the release intended the others to be released." *Id.* at 466.

Moreover, *Zenith* relied on general tort principles in criticizing the rule that a release of one tortfeasor releases all other joint tortfeasors absent an express reservation of rights. We therefore cannot accept Pacific Drydock's contention that the *Zenith* rule is limited to statutory causes of action. Nor can we see any Supreme Court

inclination in cases under federal common law, to revert either to the strict, "ancient" common-law rule that a release extinguishes the entire cause of action and therefore releases all joint tortfeasors regardless of the intent of the parties, or to the rule, expressed in *Fox* and *Undersea*, that a release of one tortfeasor releases all others unless the release specifies otherwise.

The Supreme Court's disapproval of the rule in *Fox* reflects the evolution of general tort principles, as illustrated by the development of the Restatement of Torts. The First Restatement provided that a release of one tortfeasor discharged all others liable for the same harm, unless there was an express provision to the contrary. Restatement (First) of Torts § 885(1) (1939). The Second Restatement, nascent at the time the Supreme Court decided the *Zenith* case, provides for exactly the opposite result: "A valid release of one tortfeasor from liability for a harm, given by the injured person, does not discharge others liable for the same harm, unless it is agreed that it will discharge them." Restatement (Second) of Torts § 885(1) (1979). In explaining the justification for the Second Restatement rule, one court has noted that "this rule will insure that the intent of the parties to the release is given effect and will greatly minimize the possibility of any party being misled as to the effect of the release." *Young v. State*, 455 P.2d 889, 893 (Alaska 1969).

Thus, we hold that the release of one tortfeasor does not release all other joint tortfeasors absent an agreement to effect such a release. The rule is appropriate for the federal common law context, including admiralty, as well as for the statutory context discussed in *Zenith*. *See* Restatement (Second) of Torts § 885(1) (1979).

The facts before us do not show any agreement intended to release Pacific Drydock. The primary support for Pacific Drydock's position is found in a self-serving letter sent by Pacific Drydock to the attorneys for the plaintiff and for the United States, stating: "It is our client's position that the release of the United States also releases our client." This is not an

indication of the contractual intent of the parties to the release.

In the district court, Pacific Drydock alternatively moved for summary judgment pursuant to Fed.R.Civ.P. 56. Although the district court did not decide the motion, Pacific Drydock asks us to do so in the event that we hold, as we do, that the dismissal on the basis of the release was inappropriate. It would, however, be premature for us to consider the merits before the district court has determined whether there remain genuine issues of material fact. *See, e.g., Liberty Glass Co. v. Allstate Ins. Co.,* 607 F.2d 135, 138 (5th Cir. 1979).

REVERSED AND REMANDED.