Homer J. HOLLAND, Howard R. Ross, and First Bank, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 95–524C.

United States Court of Federal Claims.

Feb. 20, 2007.

David B. Bergman, Arnold & Porter, LLP, Washington, D.C., for plaintiffs. Melvin C. Garbow, Howard N. Cayne, Michael A. Johnson, Joshua P. Wilson, Arnold & Porter, LLP, Washington, D.C., of counsel. Donald J. Gunn, Jr., Sharon R. Wice, Gunn and Gunn, St. Louis, MO, co-counsel for plaintiff First Bank.

John H. Roberson, Trial Attorney, William F. Ryan, Assistant Director, Jeanne E. Davidson, Deputy Director, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Stuart E. Schiffer, Deputy Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Kenneth M. Dintzer, Richard B. Evans, Elizabeth A. Holt, William G. Kanellis, David A. Levitt, John J. Todor, James R.

ment as to damages. Accordingly, that motion is hereby DENIED as moot.

Whitman, United States Department of Justice, Washington, D.C., of counsel.

### OPINION AND ORDER

GEORGE W. MILLER, Judge.

On November 17, 2006, the Court filed an opinion and order holding the Government liable to plaintiff First Bank for breach of the River Valley I and River Valley II contracts. *See Holland v. United States,* 74 Fed.Cl. 225, 227–28 (2006). On December 19, 2006, defendant filed a motion for reconsideration of the Court's opinion and order ("Def.'s Mot.," docket entry 340), pursuant to Rule 59(a) of the Rules of the United States Court of Federal Claims ("RCFC"). Pursuant to this Court's order of December 22, 2006, plaintiffs filed an opposition to defendant's motion ("Pls.' Opp'n," docket entry 342) on January 19, 2007. On January 30, 2007, defendant filed a motion for leave to file a reply in support of its motion (docket entry 344) and, at the same time, tendered for filing its proposed reply. On February 1, 2007, plaintiffs filed a response to defendant's motion for leave to file its reply (docket entry 344) and on February 5, 2007, the Court entered an order granting defendant leave to file its reply ("Def.'s Reply," docket entry 346).

In reaching the conclusion that defendant was liable to plaintiff First Bank for breach of the forbearance promises, the Court stated that it did not need to decide the question whether, upon enactment of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 (1989), contractual liability for the forbearance promises transferred from the Federal Savings and Loan Insurance Corporation ("FSLIC") to both the Federal Deposit Insurance Corporation ("FDIC") in its capacity as manager of the FSLIC Resolution Fund ("FRF") and to the Office of Thrift Supervision ("OTS"). *Holland,* 74 Fed.Cl. at 253 n. 16. The question remained whether,

on the assumption that the two agencies were concurrently liable, the effect of the Accord and Satisfaction clause in the parties' August 14, 1991, Settlement Agreement was to release OTS as well as FDIC in its capacity as manager of the FRF. Section 8(d) of the Settlement Agreements states, "This Settlement Agreement shall be governed by and construed in accordance with the federal law of the United States of America and, in the absence of controlling federal law, in accordance with the laws of the State of Illinois." Def.'s Supp.App. (docket entry 293), Ex. 3 § 8(d). The Court, unaware of any federal common law on point, looked to Illinois law. *Id.* The Court concluded that under Illinois law a release of FRF did not release OTS and therefore "the question of FDIC's concurrent liability cannot be dispositive of plaintiff's claims." *Id.*[1]

Defendant asserts that the Court made two errors with respect to OTS's liability to plaintiffs, namely that (1) the Court "misapprehend[ed] Illinois law concerning the effect of an accord and satisfaction when there are multiple defendants with joint and several contractual liability"; and (2) based on its misapprehension of Illinois law, the Court "mistakenly concluded that it was not necessary for [the Court] to decide whether the FDIC, as manager of the FRF, succeeded to the contractual rights and obligations of the FSLIC." Def.'s Mot. at 1–2.

Plaintiffs assert that, in fact, there is controlling federal common law on point and under that law a party to a contract only releases those counterparties it intends to release. Pls.' Opp'n at 3–5. Plaintiffs also contend that Illinois law is in accord with federal law in that regard. Plaintiffs argue that the plain language of the Settlement Agreement, considered in light of the surrounding circumstances, shows that the parties intended to release only FDIC as manager of the FRF and did not intend to release OTS or the United States as a

---

1. To the degree that the Court supported this conclusion by reference to the fact that under Illinois law the liability of FRF and OTS was both joint and several, the Court's analysis was incomplete. However, for the reasons stated in this opinion and order, reconsideration is unwarranted because the Court's earlier determination

was correct, *i.e.,* under Illinois law the release by plaintiff First Bank's predecessor in interest of claims against the FDIC in its capacity as manager of the FRF did not release claims against the United States for breach of the forbearance promises by OTS.

whole. *Id.* at 5–6. Therefore, plaintiffs assert, even if Illinois law governed the effect of the Accord and Satisfaction clause, OTS and the United States were not released from liability. *Id.* at 6–9.

## DISCUSSION

### I. Standard of Review

"A motion for reconsideration 'enables a trial court to address oversights, and the court appreciates the opportunity to do so.'" *Cane Tenn., Inc. v. United States,* 62 Fed.Cl. 703, 705 (2004) (quoting *Fru–Con Constr. Corp. v. United States,* 44 Fed.Cl. 298, 315 (1999)). The decision whether to grant a motion for reconsideration is largely within the trial court's discretion. *Yuba Natural Res., Inc. v. United States,* 904 F.2d 1577, 1583 (Fed.Cir.1990); *see also Triax Co. v. United States,* 20 Cl.Ct. 507, 509 (Ct.Cl.1990) ("A motion for reconsideration is addressed to the discretion of the trial court."). "To prevail on a motion for reconsideration, the movant must point to a manifest error of law or mistake of fact." *Coconut Grove Entm't, Inc. v. United States,* 46 Fed.Cl. 249, 255 (2000) (citing *Franconia Assocs. v. United States,* 44 Fed.Cl. 315, 316 (1999)).[2]

### II. Federal Common Law

■ As noted above, Section 8(d) of the Settlement Agreement states, "This Settlement Agreement shall be governed by and construed in accordance with the *federal law of the United States of America* and, in the absence of controlling federal law, in accordance with the laws of the State of Illinois."[3] Def.'s Supp.App., Ex. 3 § 8(d) (emphasis added). Plaintiffs argue that it was unnecessary for the Court to look to Illinois law because *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), established that, as a matter of federal common law, "the effect of a release upon parties unnamed in a settlement agreement 'shall be determined in accordance with the intentions of the parties.'" Pls.' Opp'n at 3 (quoting *Zenith Radio,* 401 U.S. at 345, 91 S.Ct. 795).

In *Zenith Radio,* an antitrust case, the Supreme Court of the United States "repudiated" the common law rule that "the release of one joint tortfeasor releases other tortfeasors who are not parties to or named in the release." *Zenith Radio,* 401 U.S. at 343–44, 91 S.Ct. 795. As defendant points out, however, *Zenith Radio* "repeatedly invoked relevant *tort* authorities, including the First Restatement of *Torts,* the then tentative draft of the Second Restatement of *Torts,* and the Uniform Contribution Among *Tortfeasors* Act." Def.'s Reply at 2–3 (emphasis in original). For that reason it is not clear to this Court that *Zenith Radio* establishes federal common law with respect to the effect of a

2. Relying upon the cases cited, defendant in its motion states that in order to prevail it "must point to a manifest error of law or mistake of fact." Def.'s Mot. at 3. Since the order as to which reconsideration is sought is interlocutory and not a final judgment, the Court, applying the law of the case doctrine, has the power to reconsider and modify its order at any time before the entry of a final judgment, subject to the principle that questions once decided ought not to be subject to continued re-argument. *Fla. Power & Light Co. v. United States,* 66 Fed.Cl. 93, 95–96 (2005).

3. In the present context, the distinction between federal law and Illinois law may be less clear cut than the language of Section 8(d) of the Settlement Agreement would seem to suggest. The United States Court of Appeals for the Seventh Circuit agreed with the United States Court of Appeals for the Ninth Circuit that with respect to "the scope ... of a release of a federal cause of action" the "governing federal law does not require the courts to establish a uniform federal

rule." *Lumpkin v. Envirodyne Indus., Inc.,* 933 F.2d 449, 458 (7th Cir.1991) (citing *Mardan Corp. v. C.G.C. Music, Ltd.,* 804 F.2d 1454, 1458 (9th Cir.1986)). Instead, even assuming the issue is governed by federal law, federal courts must "look to the applicable state law for guidance in areas where Congress has not provided for a uniform federal rule." *Id.* Thus, the Court "must examine the law of release in Illinois" because "the federal law in this area arises through the incorporation of 'state rules of decision.'" *Lumpkin,* 933 F.2d at 458 (citing *Mardan,* 804 F.2d at 1458). *See* RICHARD H. FALLON, JR., DANIEL J. MELTZER & DAVID L. SHAPIRO, HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 702 (5th ed. 2003) ("[T]he current approach ... suggests that the presumption is ... that while under Clearfield *[Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943)]* federal common law governs, in general it will incorporate state law as the rule of decision."). The Court's analysis of Illinois law is set forth in Section III, *infra.*

release of one of two or more joint obligors on a contract.

Plaintiffs nonetheless assert that "[t]he *Zenith Radio* rule has been 'interpreted broadly by the circuit courts,' and deemed 'appropriate for the federal common law context.' " Pls.' Opp'n at 4 (quoting *Avery v. United States,* 829 F.2d 817, 819 (9th Cir.1987)). The cases plaintiffs cite do not, however, explicitly extend the rule of *Zenith Radio* to cases involving the release of one of several joint obligors on a contract. *Avery,* for example, involved a release in a personal injury (tort) suit brought under admiralty law.

Plaintiffs also cite *Sims v. Western Steel Co.,* 551 F.2d 811, 818 (10th Cir.1977), *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.,* 995 F.2d 425, 446–47 (3d Cir.1993) (Sloviter, C.J., concurring in part and dissenting in part), and *Ruskay v. Waddell,* 552 F.2d 392, 395 (2d Cir.1977). Pls.' Opp'n at 5. However, those cases do not appear to this Court to establish that *Zenith Radio* prescribes federal common law governing the effect of a release of one of two or more joint obligors on a contract. *Sims* involved a tort claim, and applied Utah law rather than federal common law. *Sims,* 551 F.2d at 819. *Gulfstream Aerospace,* like *Zenith Radio,* dealt with the release of an antitrust claim, not a contract claim, *Gulfstream Aerospace,* 995 F.2d at 428, and *Zenith Radio* is discussed in the dissenting, rather than the majority, opinion. Finally, the court in *Ruskay* was confronted with the issue whether the broad language of release executed by the parties released *claims* unknown to the parties at the time, not whether it released all joint obligors on a contract. *Ruskay,* 552 F.2d at 394 ("Appellants vigorously urge that, despite the clear language of

this release, it is operative only as to the specific claims they were pressing at the time of settlement.").[4]

In view of the foregoing, this Court is not persuaded that the Supreme Court's decision in *Zenith Radio* governs the effect of a release of one of two or more joint obligors on a contract (in this case, two government agencies). Outside of *Zenith Radio* and its progeny, plaintiffs have not pointed to any other source of federal common law relating to the effect of a release of one of two or more joint obligors on a contract. The Court therefore concludes that there is no "controlling federal law," Pls.' Opp'n at 3, and the Court must turn elsewhere to determine the effect of the Accord and Satisfaction clause of the Settlement Agreement on OTS's liability.[5]

### III. Illinois Law

In the absence of governing federal law, the Settlement Agreement and the Assistance Agreements are to be "governed by and construed … in accordance with the laws of the State of Illinois." Def.'s Supp. App., Ex. 3 § 8(d); *see also* Joint App. to Joint Stipulations of Fact (docket entry 119) 4363, 4884; *Holland,* 74 Fed.Cl. at 252 n. 16.

Defendant argues that Illinois follows the common law rule, "repudiated" by the Supreme Court in *Zenith Radio,* that a co-defendant "is released by a broad release between a plaintiff and another co-defendant *irrespective of the fact* that the latter co-defendant was not a party to the release agreement." Def.'s Mot. at 7 (citing *Clark v. Mallory,* 185 Ill. 227, 56 N.E. 1099 (1900))

---

4. Plaintiffs also assert that the "federal district courts have followed suit" in applying a *Zenith Radio* to the release of breach of contract claims. Pls.' Opp'n at 5 & n. 21. However, *City of Cleveland v. Cleveland Elec. Illuminating Co.,* 538 F.Supp. 1287, 1289–90 (N.D.Ohio 1980) deals with the release of an antitrust claim and *Thompson v. United Transp. Union,* 2000 WL 1929963 deals with the release of a sexual harassment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Although *Thompson* refers to *Zenith Radio's* holding as establishing "federal common law," *Thompson,* 2000 WL 1929963 at *5, that statement, in con-

text, does not seem to this Court to establish that *Zenith Radio* prescribes federal common law governing the effect of a release of one of two or more joint obligors on a contract.

5. If the Court were wrong about the effect of the *Zenith Radio* decision, it would follow that the Court was correct in its prior determination that the release by plaintiff First Bank's predecessor in interest of claims against the FDIC in its capacity as manager of the FRF did not release claims against the United States for breach of the forbearance promises by OTS.

(emphasis in original).[6]

However, under Illinois law the common law rule was subject to an important qualification. "At common law, the unconditional release of one of two or more joint tortfeasors released the other tort-feasors, even though the latter were not a party to the release or specifically identified in the release, *unless a contrary intent appeared* from the face of the instrument." *Cherney v. Soldinger*, 299 Ill.App.3d 1066, 234 Ill.Dec. 65, 702 N.E.2d 231, 234 (1998) (*citing Porter v. Ford Motor Co.*, 96 Ill.2d 190, 195, 70 Ill.Dec. 480, 449 N.E.2d 827 (1983)) (emphasis added). In Illinois, this common law rule applied not only to tortfeasors; it "was also applied outside of the tort area to co-obligors on a contract." *Id.* at 235 (citing *Clark*, 185 Ill. 227, 56 N.E. 1099; *Parmelee v. Lawrence*, 44 Ill. 405 (Ill.1867)).

At common law, an instrument that purported to release just one of two or more joint obligors would not only fail to reserve any rights against the co-obligors, but, in fact, would be "contradictory in its terms, for if it is to be regarded as a true release of one joint debtor, it would be legally impossible to reserve rights against the others, since their obligations could not continue to exist without all being bound." 12 RICHARD A. LORD, WILLISTON ON CONTRACTS § 36:22 (4th ed.1999). In order to effectuate the parties' intent, courts, including Illinois courts, "have therefore held that a release with such a reservation is in legal effect no release at all, but merely a covenant not to sue." *Id.; see, e.g., Holman v. Simborg*, 152 Ill.App.3d 453, 105 Ill.Dec. 682, 504 N.E.2d 967, 970 (1987) (Supreme Court of Illinois "adopted the more reasonable view that where a release 'upon its face, and in connection with the surrounding circumstances, [shows] that it was the intention of the parties not to release the co-obligors, such intention, as in the case of other written contracts * * * shall be construed as a covenant not to sue' thereby

giving [e]ffect to the intention of the parties" (quoting *Parmelee*, 44 Ill. at 413–14)).

■ Under Illinois law, it is well established that an instrument by which a party to a contract releases one of two or more joint obligors, but expressly reserves his or her rights against the other joint obligors, will be treated as a covenant not to sue the joint obligor whose release the parties sought. *Parmelee*, 44 Ill. at 413. The Supreme Court of Illinois explained that its holding in *Parmelee* "does not require ... that a release be construed as a release of only those persons expressly named. Rather, it holds that an unconditional release of one co-obligor releases all unless a contrary intent appears from the face of the instrument." *Porter*, 96 Ill.2d at 195, 70 Ill.Dec. 480, 449 N.E.2d 827. The Court must therefore determine whether the Settlement Agreement evinces with sufficient clarity an intent by First Bank's predecessor in interest to release only FDIC as manager of FRF, such that an Illinois court would construe the Settlement Agreement as a covenant not to sue the FDIC in its capacity as manager of FRF.

■ *Parmelee* involved a transaction in which four partners borrowed $50,000 from a lender and, as security, conveyed to him certain real estate. The partners agreed to repay the loan in five annual installments with ten percent interest, after which the lender agreed to reconvey the property to the partners. *Parmelee*, 44 Ill. at 406. After they stopped repaying the loan, the partners argued that a release executed in favor of one of the partners served to release them all. *Id.* at 408. The release executed by Lawrence, the creditor, to Bigelow, one of the partner-debtors, read, in relevant part:

I release and discharge ... Bigelow, his property and estate, from all claims on account of the same.

---

6. The common law rule "has often been denounced as anomalous and unjust," RESTATEMENT (SECOND) OF CONTRACTS § 294 cmt. a (1981), and, as the Supreme Court of Illinois has stated, the rule "deservedly has been strongly criticized," *Alsup v. Firestone Tire & Rubber Co.*, 101 Ill.2d 196, 200, 77 Ill.Dec. 738, 461 N.E.2d 361 (Ill. 1984), and it "has been described as 'harsh,' 'without any rational basis,' and 'very unfair.'" *Id.* (quoting JOHN D. CALAMARI & JOSEPH M. PERILLO, THE LAW OF CONTRACTS § 20–3 (2d ed.1977)). The rule calls to mind Holmes's famous dictum: "It is revolting to have no better reason for a rule of law than that it was laid down in the time of Henry IV." Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 HARV. L.REV. 457, 469 (1897).

If the property mentioned in the above articles has to be sold under any order of the court at Chicago, the interest of said Bigelow in it is to be protected according to this settlement. Nothing herein contained shall in anywise affect my rights or demand against said Parmelee, Gage or Johnson, or their interest in said property.

*Id.* at 408.

In determining the effect of the instrument on the liability of Bigelow's partners, the Supreme Court of Illinois stated that

[t]he difficult question in this case relates to the effect to be given to the instrument executed by Lawrence to Bigelow. If it is to be regarded as an absolute and unconditional release of Bigelow, it must also operate as a discharge of his co-obligors, and the mere fact that, when a release is executed, the parties are ignorant that such will be its legal effect, will not prevent its so operating, if executed and delivered unconditionally and without reference to its bearing upon other parties. But a release, like every other written instrument, must be so construed as to carry out the intention of the parties. This intention is to be sought in the language of the instrument itself when read in the light of the circumstances which surrounded the transaction.

*Parmelee*, 44 Ill. at 409–10. The court decided that

where the release of one of several obligors shows upon its face, and in connection with the surrounding circumstances, that it was the intention of the parties not to release the co-obligors, such intention, as in the case of other written contracts, shall be carried out, and to that end the instrument shall be construed as a covenant not to sue.

*Id.* at 413.

In *Clark*, a creditor entered into negotiations with one partner in a partnership in order to settle the partner's indebtedness on a note. After reaching a settlement, the debtors asserted that, under Illinois common law, the settlement released the other partner's liability for the debt as well. *Clark*, 185 Ill. at 229–30, 56 N.E. 1099. The creditor attempted to introduce evidence that the parties had intended that the release would be applicable solely to the claim of the first partner, *id.* at 231–32, 56 N.E. 1099, but the court explained that, because the settlement instrument was neither ambiguous nor indefinite, the introduction of extrinsic evidence was inappropriate. *Id.* at 232, 56 N.E. 1099. Finding that the release had released both partners, the court held

that where the release of one of several obligors shows *upon its face* and in connection with the surrounding circumstances that it was the intention of the parties not to release the co-obligors, such intention, as in the case of other written contracts, shall be carried out, and to that end the instrument shall be construed as a covenant not to sue.

*Id.* at 233, 56 N.E. 1099 (quoting *Parmelee*, 44 Ill. at 413) (emphasis in original). In *Clark*, "no such intention appear[ed] upon the face of the instrument or from the circumstances connected with its execution." *Id.*

In applying Illinois law to the Accord and Satisfaction clause of the Settlement Agreement (Section 5 of the Settlement Agreement), the question becomes one of contract interpretation. If the language of the clause when read in light of the surrounding circumstances demonstrates that the parties intended to release only the FRF, then under Illinois law the Accord and Satisfaction clause will be read as a covenant not to sue FRF, OTS was not released, and defendant is liable for breach by OTS of the forbearance promises. *See Holland*, 74 Fed.Cl. at 227–28.

In its November 16, 2006, opinion and order, the Court recognized that the "parties to the Settlement Agreement were the FDIC, in its capacity as manager of the FRF, River Valley III, Homer J. Holland, and Howard R. Ross." *Holland*, 74 Fed.Cl. at 247–48 (citing Def.'s Supp.App., Ex. 3 at 1). The Court also recognized that Section 5 of the Settlement Agreement conditioned its mutual releases upon "performance by each party of its respective obligations under the settlement Agreement" and limits the "discharge[ ] from ... obligation or liability" to the parties to the Settlement Agreement.

*Id.* at 249. Furthermore, the Settlement Agreement states that "[e]xcept as expressly provided in this Settlement Agreement, no provision of this Settlement Agreement is intended to benefit any persons other than the parties hereto." Def.'s Supp.App., Ex. 3 § 8(k).

Mindful that, under the governing Illinois law, the Court must divine from the language of the Accord and Satisfaction clause and the surrounding circumstances "the intention of the parties," *Clark,* 185 Ill. at 233, 56 N.E. 1099, the Court concludes that the language of the Accord and Satisfaction clause and of Section 8(k) reflects the parties' intent to limit the benefits of the Settlement Agreement, including the Accord and Satisfaction clause, to the parties to the Settlement Agreement, *i.e.,* the FRF, River Valley III, and Messrs. Holland and Ross. The parties' intent, manifested in the plain language of Sections 5 and 8(k) of the Settlement Agreement and by the surrounding circumstances, distinguishes the release at issue here from the releases at issue in *Porter* and *Clark,* in which there was no express statement that only the parties to the settlement agreement were intended to benefit from the release. As this Court concluded in its November 17, 2006, opinion and order, "the parties [to the Settlement Agreement] intended to discharge only liabilities of the FDIC, as manager of the FRF, and not liabilities of the United States as a whole." *Holland,* 74 Fed. Cl. at 249. Although neither Section 5 nor Section 8(k) specifically identify the parties against whom River Valley III reserved its rights, as was the case in *Parmelee,* those provisions and the surrounding circumstances sufficiently demonstrate the parties' intent that the release effected by the Accord and Satisfaction clause applied only to the FDIC as manager of the FRF. The Court therefore concludes that under Illinois law the release would be construed as a covenant not to sue and would have no effect upon plaintiff's claims against defendant for breach of the forbearance promises by OTS.

## CONCLUSION

For the reasons set forth above, the Court concludes that defendant has failed to estab-

lish that the Court's prior determination should be reconsidered because it was based upon an error of law or mistake of fact, or for any other reason. Accordingly, defendant's motion for reconsideration of the Court's November 17, 2006, opinion and order is DENIED.

IT IS SO ORDERED.