**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN GARAMENDI, as Insurance
Commissioner of the State of
California and as Conservator,
Liquidator and Rehabilitator of the
ESTATE OF EXECUTIVE LIFE
INSURANCE COMPANY,
        *Plaintiff-counter-defendant-*
                    *Appellee,*

        and

STEVEN POIZNER, AS INSURANCE
COMMISSIONER OF THE STATE OF
CALIFORNIA; STATE OF CALIFORNIA,
                    *Plaintiffs,*

        v.

JEAN FRANCOIS HENIN,
        *Defendant-cross-claimant-*
                    *Appellant,*

        and

JEAN-CLAUDE SEYS, an individual;
JEAN IRIGOIN, an individual; ALAIN
MALLART; NOVATEC, Erroneously
Sued as SDI Vendome SA;
MAAF ASSURANCES, a mutual
insurer organized under French
law; MAAF VIE SA, a corporation
organized under French law,
                    *Defendants,*

No. 10-57000

D.C. No.
2:99-cv-02829-
AHM-CW

ALTUS FINANCE SA, a corporation
organized under French law; CDR
ENTERPRISES, a corporation
organized under French law;
CREDIT LYONNAIS SA, a
corporation organized under
French law; CONSORTIUM DE
REALISATION SA, a corporation
organized under French Law,
          *Defendants-cross-defendants,*

ARTEMIS SA, a corporation under
French law,
          *Defendant-counter-claimant,*

FRANCOIS PINAULT,
                    *Counter-claimant,*

HARTFORD FIRE INSURANCE
COMPANY, Third-party Intervenor,
                    *Intervenor-Plaintiff,*

SUNAMERICA, INC., FKA AIG
Retirement Services, Inc.;
NATIONAL ORGANIZATION OF LIFE &
HEALTH INSURANCE GUARANTY
ASSOCIATIONS; CALIFORNIA LIFE AND
HEALTH INSURANCE GUARANTEE
ASSOCIATION; ERIC B. SIEGEL;
APOLLO ADVISORS LP; LEON D.
BLACK; CRAIG M. COGUT; JOHN J.
HANNAN; LION ADVISORS LP;
PEGASUS INSURANCE PARTNERS,
                    *Intervenors,*

SIERRA NATIONAL INSURANCE
HOLDINGS, INC.; GEORGIA LEE, as
Receiver for Sierra National
Insurance Holdings, Inc.,
            *Plaintiffs/counter-defendants-*
                            *Appellees,*

                    v.

JEAN FRANCOIS HENIN,
            *Defendant/cross-claimant-*
                            *Appellant,*

_____

MAAF VIE SA, a corporation
organized under French law;
MAAF ASSURANCES, a mutual
insurer organized under French
law; FRANCOIS PINAULT; JEAN-
CLAUDE SEYS; JEAN IRIGOIN;
ARTEMIS SA,
                            *Defendants,*

CREDIT LYONNAIS SA; ALTUS
FINANCE SA, a corporation
organized under French law; CDR
ENTERPRISES; CONSORTIUM DE
REALISATION SA, a corporation
organized under French Law,
            *Defendants/cross-defendants,*

NEW CALIFORNIA LIFE HOLDINGS,
INC.; AURORA NATIONAL LIFE
ASSURANCE COMPANY,
            *Defendants/counter-claim-*
                *Third-party Plaintiffs,*

No. 10-57009
D.C. No.
2:01-cv-01339-
AHM-CW
OPINION

HARRY W. LOW, as Conservator,
Rehabilitator, and Liquidator of
Executive Life Insurance
Company,
  *Counter-defendant/Third-party*
       *Defendant.*

Appeals from the United States District Court
for the Central District of California
A. Howard Matz, District Judge, Presiding

Argued and Submitted
May 8, 2012—Pasadena, California

Filed June 19, 2012

Before: Harry Pregerson, Susan P. Graber, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Graber

**COUNSEL**

Patrick P. Salisbury, Salisbury & Ryan LLP, New York, New York; and Brian A. Sun, Jones Day, Los Angeles, California, for the defendant/cross-complainant-appellant.

David B. Salmons, Bingham McCutchen LLP, Washington, D.C., for the plaintiff/counter-defendants-appellees.

Charles R. Rice and Arthur J. Shartsis, Shartsis Friese LLP, San Francisco, California, for the amicus curiae.

**OPINION**

GRABER, Circuit Judge:

Defendant Jean-François Hénin served as an officer of a French corporation that bought assets from an insolvent California insurance company pursuant to a rehabilitation plan. It later emerged that Hénin and others involved in the purchase had misrepresented certain key facts, making their purchase illegal under California law. In the ensuing litigation, Sierra National Insurance Holdings, Inc., came to hold two default judgments against Hénin in federal court. When Sierra tried to enforce those judgments in Hénin's home country of France, a French court refused, citing certain gaps in the content of the judgments. Sierra returned to the district court that had issued the default judgments and filed a motion under Federal Rule of Civil Procedure 60, asking the court to correct the judgments to add an explanation sufficient to permit enforcement in France. The district court granted the motion and entered two corrected judgments. Hénin appeals.

We affirm. The operative, substantive terms of the corrected judgments are identical to the terms of the original judgments. Thus, the amendments only clarified the original intent of the judgments, and the district court did not abuse its discretion in making those changes under Rule 60(a). We also hold that, by failing to challenge the original judgments, Hénin waived his arguments as to setoff, release, and the nature and amount of his liability. Finally, we conclude that the district court did not abuse its discretion by refusing to stay entry of the amended or corrected judgments.

## FACTUAL AND PROCEDURAL HISTORY

This appeal arises from two consolidated district court cases involving many different parties and claims. An aspect of one of those cases was previously appealed to us, and our earlier opinion provides a useful summary of the relevant background facts:

> This litigation arises from the 1991 insolvency and subsequent rehabilitation of the Executive Life Insurance Company (ELIC), following the largest insurance failure in California history. Pursuant to a judicially supervised rehabilitation plan, Insurance Commissioner John Garamendi (the Commissioner) oversaw competitive bidding for the assets of the ELIC Estate, which included a large junk bond portfolio. Altus S.A., a subsidiary of Credit Lyonnais S.A., which is controlled by the French government, and the MAAF Group, a consortium of French and Swiss insurers, submitted the winning bid. Altus purchased the junk bond portfolio for cash, and the MAAF Group agreed to create a new company to reinsure ELIC's outstanding insurance policies. Artemis S.A., a holding company . . . , subsequently purchased a percentage of that junk bond portfolio and the newly formed insurance company.

The rehabilitation plan was a resounding success. The Commissioner proclaimed the rehabilitation of ELIC "by any objective standards a home run," resulting in a full recovery for 92 percent of the insolvent insurer's former policy holders. The rehabilitation was also a home run for Artemis, which earned hundreds of millions of dollars in profit from appreciation of the ELIC Estate's junk bond portfolio.

In 1999, however, years after the rehabilitation plan had been implemented, the Commissioner learned of a conspiracy between the members of the Altus/MAAF Group to circumvent regulatory barriers to foreign entities, like Altus, from issuing insurance in California.

*California v. Altus Fin. S.A.*, 540 F.3d 992, 995 (9th Cir. 2008) (footnotes omitted).

That conspiracy has generated voluminous litigation in several related cases. *See id.* at 996 n.3. Specifically, the conspiracy involved false "assurances from Credit Lyonnais and Altus that they did not in fact maintain secret control over the MAAF Group." *Id.* at 997. Their control over that company violated California Insurance Code section 699.5, which prohibited "entities controlled by foreign governments, like Credit Lyonnais and Altus, from obtaining certificates of authority from the Department of Insurance to conduct business in California." *Id.*

The claims involved in this appeal are asserted against Jean-François Hénin (1) by Sierra National Insurance Holdings, Inc., and its receiver, Georgia Lee (collectively, "Sierra") and (2) by the Commissioner. Sierra and the Commissioner brought separate actions in California state court in 1999 and 2001. Those actions were removed to fed-

eral court, where the district court consolidated the two cases for all purposes.

The relevant complaints are substantially identical. Both complaints state that Hénin "was at all relevant times the chief executive officer of Altus." Both complaints describe the insolvency and rehabilitation of ELIC, along with the competitive bidding process. Both complaints allege that Altus employed a front for their control over ELIC's insurance business, via secret agreements referred to as "contrats de portage." Both complaints allege specific misrepresentations relating to Altus' relationship with the front. Both complaints allege that Altus knew that California and federal law prohibited it from owning or controlling, directly or indirectly, a life insurance company. Both complaints allege that Hénin "actively participated" in the deceptions regarding "the extent to which Altus and Credit Lyonnais owned and controlled" the new holding companies that were created to take over ELIC's insurance business. Both complaints allege that Hénin "directly benefited from the acquisition of [ELIC]'s assets through various means, including but not limited to dividends, bonuses, salaries and ownership of companies that at some time directly or indirectly owned or own the [ELIC] high-yield bond portfolio and/or [ELIC] insurance business." Finally, both complaints allege joint and several liability against all defendants.

For those alleged wrongs, Sierra sought compensatory damages in excess of $2 billion, as well as exemplary damages and expenses. Sierra rested its damages calculation on a claim that the conspiracy prevented Sierra's bid from being accepted, thereby depriving it of the $2 billion in profits that it would have made had it purchased ELIC's assets and insurance business.

The Commissioner's prayer for relief, by contrast, requested not only compensatory and punitive damages, but also restitution for unjust enrichment. The Commissioner

appears to have calculated compensatory damages primarily as lost profits. The Commissioner did not specify an amount of damages, but he did seek an accounting to determine that amount.

The Commissioner's complaint and Sierra's complaint also asserted claims against several other defendants involved in the conspiracy, primarily corporations. The Commissioner and Sierra settled with some of those defendants. Others (including Hénin) defaulted, leaving only two remaining defendants, Artemis and one of its principals, François Pinault. *Altus Fin.*, 540 F.3d at 999. Sierra's claims against Artemis and Pinault were dismissed.

Thus, there were essentially three categories of defendants: (1) those who settled prior to default; (2) those who defaulted; and (3) those against whom the Commissioner went to trial before a jury, but against whom Sierra had no surviving claim. Along with certain other corporate co-defendants, Hénin defaulted, placing him in the second category.

In March 2005, the district court granted Sierra's request to enter a default against Hénin for failure to appear at any court proceeding for nearly a year, including a failure to appear either at the pretrial conferences or at trial. In April 2005, the district court granted the Commissioner's request to enter a default against Hénin for essentially the same reasons. Because the entries of default established liability, but not the amount of damages, the Commissioner and Sierra filed additional materials to support their claims for damages and to obtain default judgment. *See generally* Fed. R. Civ. P. 55(b)(2)(B) (after entry of default, a court may hold hearings to determine the amount of damages in order to effect a default judgment).

The Commissioner filed an application for default judgment wherein he quantified his damages against Hénin and certain other defaulting defendants. Relying on a contempora-

neously filed expert declaration and transcripts of a deposition of Hénin, the Commissioner claimed and documented unjust enrichment of approximately $10.8 million, including interest. The Commissioner claimed and documented a separate amount of unjust enrichment against the other defaulting defendants, collectively. Although the Commissioner specifically requested joint and several liability as to certain defendants, he did *not* list Hénin as a defendant who should be held jointly and severally liable.

On November 9, 2005, the district court memorialized its rulings on the Commissioner's request for default judgment. The district court found Hénin to be "individually liable" for the exact amount calculated by the Commissioner's expert, approximately $10.8 million.[1] The district court specifically declined to award punitive damages.

On December 1, 2005, the district court entered a default judgment against Hénin in favor of the Commissioner. In that judgment, the district court reiterated the $10.8 million damages award and referred to the Commissioner's expert report. The judgment itself does not specify whether Hénin's liability is intended to be individual or joint and several, but he is the only defendant named and discussed in the substantive section of that judgment.[2]

Sierra similarly filed a motion for entry of default judgment against Hénin and the other defaulting defendants. Sierra requested compensatory damages for lost profits in the amount of approximately $3.3 billion, subject to offset for settlements with other defendants, and it submitted expert

---

[1]The district court made a separate and different finding of restitutionary damages against the other defaulting defendants, expressly stating that those defendants were jointly and severally liable among themselves.

[2]On that same day, the district court entered a *separate* default judgment against the other defaulting defendants, expressly stating that their liability was joint and several.

reports to support that figure. Sierra's damages motion does not specify or request joint and several liability.

On December 7, 2005, the district court entered an order on Sierra's motion. In that order, the district court concluded that, although Sierra had failed to establish a right to recover lost profits, it was entitled to compensatory damages consisting of costs and attorney fees. The order allowed punitive damages against the other defaulting defendants but *not* against Hénin. The district court ordered that, "[a]s for M. Hénin, the judgment shall be the same as it was for the Commissioner."

On December 21, 2005, the district court entered a default judgment against Hénin for approximately $10.8 million in favor of Sierra. As with the judgment in favor of the Commissioner, the judgment itself does not specify whether Hénin's liability is intended to be individual or joint and several, but he is the only defendant named and discussed in that judgment.[3]

Hénin did not appeal the default judgments when they became final in 2005. The Commissioner then assigned his judgment to Sierra. Later, Hénin entered an *Alford* plea[4] with regard to the criminal indictment against him, arising from the transactions discussed above.

In February 2007, Sierra commenced an action to enforce the judgments in France. The French court filed its decision in December 2009, refusing enforcement because the judg-

---

[3]Less than a week later, the district court entered a separate default judgment for Sierra against the other defaulting defendants, expressly stating that their liability was joint and several. After the court issued those default judgments, the other defaulting defendants settled with both Sierra and the Commissioner, receiving releases in return.

[4]*See Rhoades v. Henry*, 598 F.3d 511, 513 n.1 (9th Cir. 2010) (noting that "a plea may be accepted for which there is a factual basis even though the defendant asserts his innocence" (citing *North Carolina v. Alford*, 400 U.S. 25 (1970))).

ments lacked sufficient explanation. In particular, the French court noted that "many other defendants were indistinctly blamed for the same facts, so that it is impossible to know the causes of the sentences pronounced." The French court also noted that the judgments did not clearly allow it to rule out the possibility that some of the damages were punitive in nature, in contravention of French public policy.

In June 2010, Sierra filed a motion asking the district court to correct or clarify its judgments under Rule 60(a) or, alternatively, under Rule 60(b)(6) so as to "supply the details the French court found wanting and to make it clear that the Judgments do not include a punitive element."

Over Hénin's opposition, the district court granted the motion under Rule 60(a), issuing two "corrected" judgments. The corrected judgments each state that they "change[ ] no substantive provision" of the original judgments, nor do they "reflect any change in the reasoning" that led the district court to enter the original judgments. The corrected judgments state that they "incorporate[ ] only facts and evidence before the [district court] at the time" of the original judgments, and they "suppl[y] the additional information to assure . . . enforcement in France."

The corrected judgments are very similar to one another. Each consists primarily of two parts—a first part establishing the basis of liability and a second part establishing the reasons for the amount of the damages awards. The liability portion is largely identical in both corrected judgments, reciting facts relating to the conspiracy and stating that "Hénin, at all relevant times the Chief Executive Officer of Altus, was one of the Defendants who committed these wrongful acts which enabled them to acquire ELIC." The corrected judgment pertaining to Sierra further states, "Sierra's Complaint contained allegations specifying false statements made by Defendants and by Henin individually to the Commissioner and to other

regulatory agencies." The corrected judgment pertaining to the Commissioner adds:

> The Complaint and the evidence specified fraudulent and misleading documents filed by Defendants and Hénin individually to the Commissioner and to other regulatory agencies. The Complaint and the evidence also established that Hénin "directly benefited from the acquisition of ELIC's assets through various means, including but not limited to dividends, bonuses, salaries and ownership of companies that at some time directly or indirectly owned or owns the ELIC high-yield bond portfolio and/or ELIC insurance business."

The damages portion is different in each corrected judgment. In the corrected judgment pertaining to the Commissioner, the district court reiterated the amounts calculated by the Commissioner's expert and referred to that expert's submissions. The corrected judgment adds that Hénin had an opportunity to rebut the expert's submissions but did not do so. The corrected judgment explains that no punitive damages were awarded, citing the November 9, 2005 ruling on the Commissioner's request for default judgment. The corrected judgment further explains that the damages are for restitution and unjust enrichment, that the damages are independent of the award to Sierra, and that the judgment was not intended to be subject to offset for any amount recovered from other defendants.

In the corrected judgment pertaining to Sierra, the district court also reiterated the amount of damages announced in the original judgment. The corrected judgment states that Sierra was prepared to submit expert testimony fixing its damages at approximately $3.3 billion. The corrected judgment notes that Hénin had an opportunity to rebut the expert's submissions but did not do so. The corrected judgment notes that the district court had determined that Sierra was entitled to compen-

satory damages but not lost profits, citing the December 7, 2005 order resolving Sierra's motion for default judgment. The corrected judgment further explains that the district court set the amount of damages in recognition that Hénin is an individual and did not benefit to the same extent as the other defendants (primarily corporations), that the damages award is independent of the award to the Commissioner, and that the $10.8 million figure represented the portion of Sierra's losses that could be attributed to Hénin personally, as conservatively estimated by his own personal gain. The corrected judgment notes that, although the district court awarded punitive damages to Sierra, those damages were limited to the *other* defaulting defendants; the corrected judgment cites the December 7, 2005 order in support of that statement. Finally, the corrected judgment notes that the damages award was not intended to be subject to offset for any amount recovered from other defendants.

Both judgments contain two pieces of new information that were not available at the time of default: (1) they note Hénin's post-default *Alford* plea in his criminal case; and (2) they quote from the hearing on the Rule 60 motion, where the district court "stated that Hénin was 'one of the key architects of this fraud,' and that he 'is still fighting to protect what the record shows were some ill-gotten and very substantial profits and gains that he derived from what he did.' "

Hénin timely appeals the district court's correction of its judgments under Rule 60(a).

## STANDARD OF REVIEW

"The standard of review for [a] Rule 60(a) claim is abuse of discretion." *Blanton v. Anzalone*, 813 F.2d 1574, 1577 (9th Cir. 1987). "A district court abuses its discretion when it makes an error of law . . . ." *United States v. 4.85 Acres of Land*, 546 F.3d 613, 617 (9th Cir. 2008) (internal quotation marks omitted).

## DISCUSSION

A. *Federal Rule of Civil Procedure Rule 60(a)*

[1] Federal Rule of Civil Procedure 60(a), titled "Corrections Based on Clerical Mistakes; Oversights and Omissions," states:

> The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

In the past, we have explained the role of Rule 60(a) by contrasting it with Rule 59(e),[5] the rule for altering or amending a judgment:

> The history of Rule 59(e) shows that "alter or amend" means a substantive change of mind by the court. In contrast, a court's *failure to memorialize part of its decision is a clerical error.* Power to correct clerical errors of omission derives from Rule 60, not Rule 59(e).

*Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir. 1983) (emphasis added) (citations and paragraph break omitted). We have consistently interpreted Rule 60(a) to allow a district court to correct omissions so long as those corrections are limited to clarification of matters intended to be implied or subsumed by the original judgment, rather than

---

[5]Federal Rule of Civil Procedure 59(e) simply states: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

a change of course or a modification to the intended legal effect of a judgment.

For example, in *Miller*, we upheld the district court's modification of a previously issued judgment denying a contempt motion; the modification clarified that the court also denied the motion's request for sanctions. *Id.* at 526. We observed that, under Rule 60(a), a district court may "conform the written judgment to the *partly tacit intention* of its oral ruling." *Id.* at 527 (emphasis added).

**[2]** Thus, Rule 60(a)'s touchstone is fidelity to the intent behind the original judgment. In *Blanton*, we wrote:

> In deciding whether a trial court may alter a judgment pursuant to Fed. R. Civ. P. 60(a), our circuit focuses on what the court *originally intended* to do. A judge may invoke Rule 60(a) in order to make a judgment reflect the actual intentions of the court, *plus the necessary implications*.

813 F.2d at 1577 (second emphasis added) (citations omitted); *see also Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 636 (9th Cir. 1989) (upholding district court's correction, under Rule 60(a) of a judgment where it had "inadvertently failed to memorialize part of its decision regarding [costs and interest]").

Consistent with those precedents, a court may use Rule 60(a) to facilitate enforcement of its judgments. According to a leading treatise on the Federal Rules of Civil Procedure:

> Rule 60(a) is not limited to situations in which a judgment clearly misrepresents what the court meant to state. A district court may also invoke Rule 60(a) to resolve an ambiguity in its original order to more clearly reflect contemporaneous intent and ensure that the court's purpose is fully implemented.

. . . .

> If a judgment, as worded, is too vague to permit enforcement, the court may reword the judgment as necessary to reflect its original intent.

12 James W. Moore, *Moore's Federal Practice* § 60.11[1][c] (2011) (internal quotation marks and footnote omitted). In support of that proposition, *Moore's* cites our opinion in *Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990). In *Robi*, we expanded on *Blanton*'s rule that "it [i]s not an abuse of discretion for the district court to clarify its original intention . . . by amending the judgment pursuant to Rule 60(a)." 918 F.2d at 1445-46. The uncorrected judgment in *Robi* "ordered, among other things, that [a party's trademark] be canceled," but it "failed to identify the particular trademark to be canceled or to include any trademark registration numbers or dates of issuance." *Id.* at 1444. The United States Patent and Trademark Office was unable to identify the trademarks to be cancelled, the district court amended its judgment under Rule 60(a) to identify the trademarks with more particularity, and we affirmed. *Id.* at 1444-45.

The Second Circuit has taken a similarly broad view of Rule 60(a), allowing modification of a judgment for the purposes of enforcement in *Robert Lewis Rosen Assocs., Ltd. v. Webb*, 473 F.3d 498 (2d Cir. 2007). There, the district court's original order had confirmed an arbitration award that ordered payment of a sum certain, plus additional payments calculated as a fixed percentage of the losing party's future receipts from certain contracts. *Id.* at 500-01. The original court order confirmed the arbitration award and listed the sum certain, but "made no explicit mention of any sums due" on account of future receipts. *Id.* at 502. The prevailing party domesticated that judgment in the losing party's home state and successfully enforced it to the extent of the sum certain. *Id.* The losing party obtained a judgment of satisfaction in his home state and then sought to discharge the original judgment at the issu-

ing court, but that court refused, issuing a supplemental judgment accounting for the sums that previously had been "contingent upon future [contracts] that had yet to mature." *Id.* at 506 n.14. The Second Circuit held that "Rule 60(a) was an appropriate vehicle to correct the judgment . . . because there was no dispute over the dollar amount awarded by . . . the supplemental judgment." *Id.* at 505.

Other circuits generally agree that Rule 60(a) relief is proper to the extent that it does not deviate from the original intent of the court. The Federal Circuit has said: "Courts enjoy broad discretion to correct clerical errors in previously issued orders in order to *conform the record to the intentions of the court* and the parties." *Agro Dutch Indus. Ltd. v. United States*, 589 F.3d 1187, 1192 (Fed. Cir. 2009) (emphasis added) (citing *Robert Lewis Rosen Assocs.*, 473 F.3d at 504-05 & n.11; *Robi*, 918 F.2d at 1445-46). In that case, the Federal Circuit relied, in part, on Rule 60(a) to approve the trial court's correction of the effective date of an injunction because, although the date in the original injunction had been chosen deliberately, the intent of the injunction would have been better served by the corrected date. *Id.* at 1192-93.

Similarly, the District of Columbia Circuit allowed a court to correct an omission under Rule 60 because the correction "constru[ed] the judgment, consistently with its language, in accordance with the *contemporaneous intent of the court* as well as the understanding of the parties." *Jackson v. Jackson*, 276 F.2d 501, 503 (D.C. Cir. 1960) (emphasis added). The court in that case approved a district court's use of Rule 60[6]

---

[6]The court in *Jackson* did not cite subsection (a) in particular, but the cited portion of the opinion clearly relies on Rule 60(a) or some analogous predecessor. *Compare Jackson*, 276 F.2d at 503 (quoting Rule 60 as providing that "errors therein (in judgments) arising from oversight or omission may be corrected by the court at any time"), *with* Fed. R. Civ. P. 60(a) ("The court may correct a clerical mistake or a *mistake arising from oversight or omission whenever one is found* in a judgment, order, or other part of the record." (emphasis added)).

to correct an original order requiring a husband to provide maintenance payments to his wife and children. The correction limited those payments to periods when the wife and children were in a particular area, consistent with the original intent of the court. *Id.* at 502-03.**[7]**

**[3]** In sum, then, Rule 60(a) allows a court to clarify a judgment in order to correct a "failure to memorialize part of its decision," to reflect the "necessary implications" of the original order, to "ensure that the court's purpose is fully implemented," or to "permit enforcement." We now hold that Rule 60(a) allows for clarification and explanation, consistent with the intent of the original judgment, even in the absence of ambiguity, if necessary for enforcement. We emphasize that this broad rule does not allow a court to make corrections that, under the guise of mere clarification, "reflect a new and subsequent intent because it perceives its original judgment to be incorrect. Rather, the interpretation must reflect the contemporaneous intent of the district court as evidenced by the record." *Burton v. Johnson*, 975 F.2d 690, 694 (10th Cir. 1992) (citation omitted); *see also* 12 *Moore's Federal Practice* § 60.11[2][b].

---

**[7]***See also Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194-95 (5th Cir. 2011) ("Rule 60(a) authorizes a district court to modify a judgment so that the judgment reflects the ' "*necessary implications of the court's decision . . . .*" ' " (emphasis added) (quoting *United States v. Kellogg (In re W. Tex. Mktg. Corp.)*, 12 F.3d 497, 504 (5th Cir. 1994) (quoting *Robi*, 918 F.2d at 1445))), *cert. denied*, 132 S. Ct. 174 (2012); *Pruzinsky v. Gianetti (In re Walter)*, 282 F.3d 434, 441 (6th Cir. 2002) ("[A] court properly acts under Rule 60(a) when it is necessary to correct mistakes or oversights that cause the judgment to fail to *reflect what was intended* at the time of trial." (emphasis added) (internal quotation marks omitted)); *Weeks v. Jones*, 100 F.3d 124, 128 (11th Cir. 1996) (per curiam) ("While the district court may correct clerical errors to reflect *what was intended at the time of ruling*, errors that affect substantial rights of the parties are beyond the scope of rule 60(a)." (emphasis added) (internal quotation marks and alterations omitted)); *Burton v. Johnson*, 975 F.2d 690, 694 (10th Cir. 1992) ("[A] district court may also invoke Rule 60(a) to resolve an ambiguity in its original order *to more clearly reflect its contemporaneous intent and ensure that the court's purpose is fully implemented*." (emphasis added)).

**[4]** Thus, in assessing whether the amendments in this case were permissible under Rule 60(a), we must turn to the record and ensure that the clarifications did not change the operative, substantive terms of the original judgment. We are convinced that the district court's corrected judgments did not deviate from the intent of its original judgments, so the court acted within its Rule 60(a) authority. The operative, substantive terms of the corrected judgments are identical to those in the original judgments. The district court made clear in its corrected judgments that those judgments "change[ ] no substantive provision" of the original judgments, nor do they "reflect any change in the reasoning" that led the district court to enter those judgments. Moreover, those judgments "incorporate[ ] only facts and evidence before the [district court] at the time" of the original judgments. The record supports these statements and contains nothing suggesting that the corrected judgments are in any way inconsistent with the original intent of the court.

As to the liability portions of the corrected judgments, the relevant facts can be found in Sierra's and the Commissioner's complaints. Those facts were all implicitly part of the original default judgments. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). In particular, both complaints allege that Hénin (along with other individual defendants) "w[as] aware of the existence of the secret agreements" and that he "actively participated in the plan" to deceive the Commissioner. Both complaints also allege that Hénin "directly benefited from the acquisition of [ELIC]'s assets through various means, including but not limited to dividends, bonuses, salaries and ownership of companies that at some time directly or indirectly owned or own the [ELIC] high-yield bond portfolio and/or [ELIC] insurance business."

**[5]** The references to Hénin's criminal plea and his continued evasions are the only new material in the liability portions

of the corrected judgments. The reference to the criminal plea did not affect the reasoning behind the judgments; rather, this informational item was relegated to a footnote, seemingly intended just to aid the French court in understanding the significance of an *Alford* plea. Similarly, the reference to Hénin's evasions was informational only. The placement of these facts in the corrected judgments is *outside* the section substantiating the court's original holdings. Nothing in the corrected judgments' reasoning suggests that the district court relied on these additional facts in issuing default judgments against Hénin. The mere mention of outside-the-record information does not require reversal when, as here, those facts do not affect the reasoning of the original or corrected judgments.

Similarly, the damages portions of the corrected judgments are supported by the original default judgments and by the district court's contemporaneous rulings resolving the two motions for default judgment. Neither corrected judgment changes the amount of damages, and both corrected judgments reiterate the same theory of damages identified in the original rulings—compensation in Sierra's case and restitution in the Commissioner's case. It is clear from the original rulings that none of the damages attributed to Hénin was punitive in nature, so the corrected judgments' clarifications do not modify the original judgments in that regard. Further, it is clear that the district court always intended to assess damages against Hénin on an individual, rather than a joint, basis, as confirmed by a side-by-side comparison of (1) the original default judgments against Hénin and (2) the separate judgments against the other defaulting defendants. The latter clearly specify joint and several liability among those named in the judgments, but the former do not; indeed, as for the Commissioner, the district court's ruling on the motion for default judgment specifically calls for individual liability. The original judgment for Sierra does not specify individual liability, but Hénin is the only defendant named and discussed in that judgment, so such specification was unnecessary.

**[6]** The only new information in the damages portions of the corrected judgments is the district court's further explanation of how it arrived at the compensatory damages figure in favor of Sierra. But nothing in the record contradicts that explanation, and the relevant filings tend to support the district court's explanation of the reasoning behind its original judgment.

**[7]** Thus, the corrected judgments amount to nothing more than explanations and clarifications of the district court's original intent, as evidenced by the contemporaneous record. In fact, it is clear from the record that the district court always intended and understood that enforcement would occur in France, so the challenged amendments serve to identify the "necessary implications" of the original orders, to "ensure that the court's purpose is fully implemented," and to "permit enforcement." Therefore, they were authorized under Rule 60(a).

B. *Waiver of the right to challenge setoff, release, and the nature and amount of liability*

**[8]** Because the corrected judgments contain the same substantive provisions as the original judgments, Hénin had to challenge their content at the time of the original judgments or not at all. Any attempt to appeal the original default judgments would now be untimely: "If the district court properly acted under Rule 60(a), then the correction did not start a new appeal time running." *Harman v. Harper*, 7 F.3d 1455, 1457 (9th Cir. 1993) (citing cases from the First, Second, Fifth, and Eighth Circuits); *see also Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 201 n.55 (5th Cir. 2011) ("A district court's entry of a corrected judgment under Rule 60(a) is itself an appealable order, but the scope of the appeal is limited to the court's 'disposition of the Rule 60(a) motion and [does] not bring up for review the underlying judgment.' " (alteration in original) (quoting 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2871 (2d ed. 2011)).

**[9]** Having failed to challenge the original default judgments, Hénin now argues that the damages awarded in the default judgments were incorrect or not supported by the evidence, and he argues that there was an insufficient basis for holding him individually liable. Those arguments are not properly before us; the only matter that Hénin has appealed in a timely manner is whether the district court was authorized, under Rule 60(a), to correct its judgments as it did.

**[10]** Hénin also argues that, as long as the district court was correcting the default judgments, it should have made modifications to reflect his right to a setoff or release on account of the settlements with Hénin's co-defendants. To the extent that those arguments do not seek review of the original default judgments, they still fail because his liability is individual, not joint, and he has lost the opportunity to challenge that result. Hénin's setoff arguments fail because they rest on a California statute that pertains only to damages arising from *joint* tort liability.[8] *See* Cal. Civ. Proc. Code § 877 (organized

---

[8]Hénin argues that, under California Civil Procedure Code section 877, it is the complaint, rather than the judgment, that controls. In support of that contention, he relies on *McComber v. Wells*, 85 Cal. Rptr. 2d 376 (Ct. App. 1999), and *Vesey v. United States*, 626 F.2d 627 (9th Cir. 1980). His reliance is misplaced. *McComber* and *Vesey* involved the applicability of section 877 in cases in which a plaintiff had alleged joint liability in a complaint, a portion of the jointly liable defendants settled before trial, and then a jury absolved the settling defendants of all liability and assessed damages against the remaining defendants for the plaintiff's entire loss. *McComber*, 85 Cal. Rptr. 2d at 378-79; *Vesey* 626 F.2d at 632-33. In those cases, it was the complaint that controlled, meaning that the non-settling (and liable) defendants could claim setoff for the amounts paid by the settling (and non-liable) defendants even though the two groups of defendants had not been judged to be jointly liable. *McComber*, 85 Cal. Rptr. 2d at 378 ("It is irrelevant the jury ultimately found the settling defendants were not negligent."); *Vesey*, 626 F.2d at 632-33 ("Thus [the settling defendants'] subsequent exoneration of negligence in the liability trial is of no legal significance in the present case."). That result makes good sense because it serves the "fundamental goal[ ]" of § 877—preventing double recovery. *McComber*, 85 Cal. Rptr. 2d at 378; *Vesey* 626 F.2d at 633. But those cases have no application to this case, where the district court *apportioned damages individually* to Hénin rather than making him liable, jointly or otherwise, for the *total* claimed loss.

under a chapter titled "Releases from and Contribution Among Joint Tortfeasors"); *see also Hoch v. Allied-Signal, Inc.*, 29 Cal. Rptr. 2d 615, 622 (Ct. App. 1994) ("[T]he relevant language of section 877(a) . . . presupposes the existence of multiple defendants jointly liable for the same damages."); *Vesey*, 626 F.2d at 633 ("[T]he fundamental purpose of § 877 of the California Code is to preclude a double recovery arising out of the same wrong.").

**[11]** Hénin's argument that he is entitled to a release fails for the same reason. The parties dispute whether federal or state rules apply but, in either case, that rule is limited to *joint* tortfeasors. *See Avery v. United States*, 829 F.2d 817, 818-19 (9th Cir. 1987) (discussing "the rule that a release of one tortfeasor releases all other joint tortfeasors absent an express reservation of rights"); *Bee v. Cooper*, 17 P.2d 740, 742 (Cal. 1932) ("It is well settled that a release of one of two or more joint tort-feasors operates as a release of all.").

C.	*No abuse of discretion in refusing to stay entry of the amended or corrected judgments*

Finally, Hénin argues that entry of the corrected judgments should be stayed until completion of the new damages trial between the Commissioner and Artemis, to be conducted pursuant to our remand in the related case, *California v. Altus Fin. S.A.*, 540 F.3d 992 (9th Cir. 2008). We are not persuaded.

In *Neilson v. Chang (In re First T.D. & Investment, Inc.)*, 253 F.3d 520, 532 (9th Cir. 2001), we recognized the rule that "where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants." We then extended the rule beyond jointly liable co-defendants to those that are "similarly situated," such that the case against each rests on the same legal theory; it would be "incongruous and unfair" to allow a plaintiff to prevail against defaulting defendants on

a legal theory rejected by a court with regard to an answering defendant "in the same action." *Id. Neilson* held that the trial court's entry of such inconsistent judgments amounted to an abuse of discretion. *Id.* at 532-33.

Hénin correctly observes that similar theories underlie both his liability and that of Artemis in the remanded case. But *Neilson* is procedurally distinguishable because the defaulting defendants in that case pursued a direct appeal of their final judgments. *Id.* at 525 ("Defaulting Defendants appealed the entry of the final default judgments to the district court . . . .").[9] Moreover, in the cited cases, the entry of default judgment was inconsistent with or preceded the findings as to the non-defaulting defendants at the time the cases were originally decided by the district courts. *See Neilson*, 253 F.3d at 524-25, 532; *Gulf Coast*, 740 F.2d at 1502, 1505-06; *Frow*, 82 U.S. at 553. Here, by contrast, the district court followed the proper procedure. After Hénin defaulted, the court waited until completion of trial against the non-defaulting defendants before fixing damages and entering default judgments against Hénin. When the district court entered default judgments, those judgments were fully consistent with the judgments against the non-defaulting defendants. Hénin failed to appeal or otherwise timely contest those default judgments. Now,

---

[9]The same can be said for another case on which Hénin relies. *See Frow v. De La Vega*, 82 U.S. 552, 553 (1872) ("From this decree the present appeal was taken.").

The Eleventh Circuit, by contrast, has applied the "similarly situated" analysis on appeal of a Rule 60(b) motion to set aside default judgment. *Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc.*, 740 F.2d 1499, 1507, 1512 (11th Cir. 1984). But in that case, the defaulting defendant had pursued its remedies promptly. It sought relief under Rule 60(b) less than two weeks after entry of default. *Id.* at 1506-07. Furthermore, the Eleventh Circuit's decision merely allowed reconsideration of the default, and it clearly allowed the possibility of a renewed finding of default, notwithstanding the potential incongruity of verdicts. *Id.* at 1512 ("[The trial court] shall also consider the motion . . . to introduce evidence as to damages if it ultimately finds a default.").

years later, after the judgment against the non-defaulting defendants has been vacated in an appeal that Hénin failed to join, he argues that the default judgments against him should be stayed pending completion of the new damages trial against the non-defaulting defendants.

[12] Hénin's argument is insufficient to establish an abuse of discretion. He defaulted, and the amount of damages against him were fixed under proper procedures years ago; the judgments fixing those damages need not be reopened now on account of a successful appeal of another judgment by some-one else. The district court did not abuse its discretion in failing to stay entry of the corrected default judgments.

AFFIRMED.