FILED

FEB 01 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. NC-15-1095-JuKuW |
| ) | |
| STEPHEN LEE BECK and DONITA M.) | Bk. No.  11-54179-MEH |
| BECK, ) | |
| ) | |
| Debtors. ) | |
| _____) | |
| ) | |
| STEPHEN LEE BECK; DONITA M. ) | |
| BECK, ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[*] |
| ) | |
| WELLS FARGO HOME MORTGAGE,[**] ) | |
| ) | |
| Appellee. ) | |
| _____) | |

Argued and Submitted on January 21, 2016
at San Francisco, California

Filed - February 1, 2016

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable M. Elaine Hammond, Bankruptcy Judge, Presiding
_____

Appearances:    John G. Downing argued for appellants
Stephen Lee Beck and Donita M. Beck.
_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[**] Wells Fargo Bank did not participate in this appeal.

-1-

Before: JURY, KURTZ, and WANSLEE,*** Bankruptcy Judges.

Debtors Stephen Lee Beck and Donita M. Beck (Debtors) filed a motion under Rule 3012 seeking to value their real property under § 506(a) and (d) (Valuation Motion) prior to confirming their fourth amended chapter 13[1] plan (FAP). Their plan treated the second deed of trust held by Wells Fargo Bank, N.A. (Wells) against their property as unsecured.

In the notice accompanying the Valuation Motion, Debtors identified (1) Wells as the creditor with a second deed of trust on their property; (2) the address of their property; (3) the underlying loan number associated with the security; and (4) the amount of the debt. They also stated that there was a lack of equity in the property based on Stephen Beck's opinion that the value of the property was less than the sum owed to the creditor who held the first deed of trust. While the Valuation Motion reiterated this information, instead of referring to Wells' current deed of trust which was recorded against their property in 2004, Debtors mistakenly referred to a deed of trust recorded in 2002 by Wells which had been reconveyed. The bankruptcy court granted their Valuation Motion and the subsequent order (Valuation Order) again listed the deed of trust recorded in 2002.

***  Hon. Madeleine C. Wanslee, United States Bankruptcy Judge for the District of Arizona, sitting by designation.

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

-2-

The bankruptcy court then confirmed their FAP, which treated Wells as an unsecured creditor. Having filed a proof of claim (POC), Wells received over $20,000 in distributions as an unsecured creditor over the course of Debtors' plan. After completing their plan payments, Debtors sought a judgment voiding Wells' lien. Although served with the Valuation Motion, the Valuation Order, the plan and amended plans, and Debtors' request for a judgment voiding its lien, Wells failed to respond.

After Debtors realized that they had mistakenly referenced the 2002 deed of trust as opposed to the 2004 deed of trust in the Valuation Order, they filed a motion to correct it (Motion to Correct) and again sought a judgment avoiding Wells' lien. Wells did not respond or appear at the hearing. The bankruptcy court denied the motion, finding that relief under Civil Rule 60(b)(1) was not available since the motion had been brought more than one year after the Valuation Order was entered. The court further found there was no mistake as defined by case law since the information regarding Wells' deed of trust was readily available from the public records. Although Debtors' Motion to Correct and request for judgment was uncontested, the court declined to grant the motion on the basis that Wells had not received adequate notice that Debtors intended to strip its lien associated with the 2004 deed of trust.

Debtors appeal from the bankruptcy court's order denying their Motion to Correct and request for judgment voiding lien. For the reasons stated below, we REVERSE the bankruptcy court's

determination that Wells' due process rights were violated, VACATE the order denying the Motion to Correct, and REMAND this matter to the bankruptcy court for further proceedings consistent with this memorandum.

## I.  FACTS

On June 27, 2002, Debtors obtained a home equity loan from Wells.  The underlying note was secured by a second deed of trust which was recorded on July 3, 2002, as Instrument Number 2002-0010687 (2002 Deed of Trust).  On September 15, 2004, the 2002 Deed of Trust was reconveyed to Debtors.

On July 27, 2004, Stephen Beck executed a promissory note for $97,000 in favor of Wachovia Bank of Delaware, N.A. (Wachovia).  The note was secured by a second deed of trust against Debtors' property located at 901 Freedom Drive, Hollister, California (Property).  The deed of trust was recorded on August 3, 2004, as Instrument Number 2004-0013967 (2004 Deed of Trust).  At some point, Wells became the successor by merger to Wachovia.  Its records identified Debtors' loan by a loan number ending in 6995.

On April 30, 2011, Debtors filed a chapter 13 petition. One of their assets was their Property.  Debtors filed their chapter 13 plan with the petition and both were served on Wells at 3476 Stateview, Fort Mill, South Carolina 29715 (South Carolina Address).  Among other things, the plan provided:

> Debtors will file a motion to value lien of Wells Fargo (loan ending in 6995), currently secured by a 2nd deed of trust on Debtor's [sic] residence, and seek treatment of that lien was [sic] completely unsecured.

On June 2, 2011, Debtors filed the Valuation Motion.  In

-4-

the notice, Debtors stated the address of the Property, named Wells as the creditor, and valued the Property at $270,500, which was less than the approximately $296,900 owed on their first mortgage. Based on this value, Debtors asserted in the notice that "0.00 of the Wells Fargo loan . . . ending in 6995 and secured by a second deed of trust against the Residence is secured." The accompanying motion reiterated this information, but also stated:

> There is also a home equity loan (number ending in 6995) made by Wells Fargo Bank (the "2nd Loan"). The home equity loan is secured by a Short Form Deed of Trust, recorded against the Residence on July 3, 2002 as Instrument Number 2002-0010687 in the Official Public Records of San Benito County. Based on a claim submitted by Wells Fargo Bank, there was $90,376.00 owed pursuant to that second deed of trust.

Debtors supported the motion with the declaration of Stephen Beck who opined that the value of the Property was $270,500 and reiterated the paragraph above.

Debtors served the notice and motion on Wells by regular mail at the South Carolina Address and by certified mail addressed to Stanley Stoup, General Counsel, Wells Fargo & Company, 420 Montgomery Street, San Francisco, CA 94104 (San Francisco Address) and Wells Fargo c/o CSC Lawyers Incorporating Service, 2730 Gateway Oaks Dr., Ste. 100, Sacramento, CA 95833 (Sacramento Address). Wells did not respond to the motion.

On August 2, 2011, Debtors filed a second notice of opportunity for hearing re the Valuation Motion. The notice again referenced the address of the Property, the asserted value of $270,000 which was less than what was owed on the first deed of trust, and the loan ending in 6995. Debtors again asserted

-5-

that Wells' second deed of trust was wholly unsecured. This notice was served on Wells at the three addresses set forth above. Again, Wells did not respond.

On August 17, 2011, Wells filed POC 3-1. The POC asserted a secured claim in the amount of $98,809.30 and referenced the loan number "708xxxxxx6995." Attached as Exhibit "A" was an itemization of the total debt and arrearages as of the time of the filing. This itemization stated that the principal balance as of the petition date (April 30, 2011) was $90,376.22, and listed late charges as $262.45 and accrued interest of $8,170.06. No arrearages were listed on the face of the POC. Also attached to the POC was the 2004 Deed of Trust and the promissory note dated July 27, 2004.

On March 27, 2012, Debtors filed a third amended plan which stated:

> Debtors have file [sic] a motion to value lien of Wells Fargo (loan ending in 6995), currently secured by a 2nd deed of trust on Debtor's [sic] residence, and seek treatment of that lien as completely unsecured. Wells Fargo shall receive payment pursuant to Class 2(d) above.

The third amended plan provided that the unsecured creditors in Class 2(d) would receive twenty cents on the dollar. Debtors served Wells with the third amended plan at the South Carolina Address. Wells did not object to the third amended plan.

On April 23, 2012, Debtors filed the FAP which contained the identical provision stated above. The plan, as amended, further stated: "Notwithstanding section 2(d) above, general unsecured creditors shall receive a minimum of $20,140.85." The plan did not provide for Debtors to make any direct payments to

Wells. Debtors served Wells with the FAP at the South Carolina Address. Wells did not object.

The bankruptcy court granted Debtors' Valuation Motion by order dated May 2, 2012. The Valuation Order referred to the 2002 Deed of Trust and further stated:

The court finds that notice of the motion upon [Wells] was proper. . . [Wells] having failed to file timely opposition to Debtors' motion, the court hereby orders as follows:

(1) For purposes of Debtors' Chapter 13 plan only, the Lien is valued at zero. Wells Fargo Bank[], does not have a secured claim, and the Lien may not be enforced, pursuant to 11 U.S.C. §§ 506, 1322(b)(2) and 1327.

(2) This order shall become part of Debtors' confirmed Chapter 13 plan.

Debtors served Wells with the order by regular mail at the South Carolina Address and by certified mail to Stanley Stroup, General Counsel, Wells Fargo Bank, N.A., 101 N. Phillips Avenue, Sioux Falls, South Dakota 57104 (South Dakota Address)[2] and to Wells at the Sacramento Address.

On June 5, 2012, the bankruptcy court confirmed the FAP. Debtors elected to have property of the estate revest in Debtors upon plan confirmation.

On October 17, 2014, the chapter 13 trustee filed her Final Report and Account which stated that payments of $20,038.63 were made to Wells on its unsecured claim.

On October 20, 2014, Debtors filed their application for voiding lien. There, Debtors sought a judgment stating that the

---

[2] The South Dakota Address used for Stanley Stroup was different from the San Francisco Address that was used previously for service.

-7-

2004 Deed of Trust listing Wells as a beneficiary was "for all purposes void and unenforceable." Debtors served the application and accompanying declaration on Wells by regular mail at Wells Fargo Home Mortgage, 1 Home Campus, MAC #X2302-04C, Des Moines, IA 50328 (Iowa Address),[3] and by certified mail to Stanley Stroup at the South Dakota Address and to Wells at the Sacramento Address. Wells did not respond.

At some point, Debtors discovered that they had mistakenly referred to the 2002 Deed of Trust in the Valuation Motion and Valuation Order. Accordingly, on February 12, 2015, Debtors filed the Motion to Correct and again requested a judgment voiding lien. Through the Motion to Correct, Debtors sought to have the Valuation Order reflect that the lien affected by the valuation was the 2004 Deed of Trust. The Motion to Correct was based on Rule 9024, which incorporates Civil Rule 60(a), Rule 3012, and the bankruptcy court's Guidelines for Valuing and Avoiding Liens in Chapter 11 and Chapter 13 cases.[4]

---

[3] This address was listed on Wells' POC as the address where payment should be sent.

[4] The guidelines require the debtor to file a separate motion to obtain valuation of a secured creditor's claim. The motion must be served upon the affected lienholder in accordance with Bankruptcy Local Rule (BLR) 9014-1(b) & (c) and in the manner required by the Rules; "in particular, Rule 7004(b) and 7004(h)." The guidelines further provide that the motion must be resolved before the plan is confirmed. Finally, the guidelines require that the motion be supported by a memorandum of points and authorities and any declarations under penalty of perjury establishing all facts necessary to entitle debtor to the relief required. "At minimum, required declarations include statements by competent witnesses regarding the value of the collateral and the balance due on each lien relevant to the motion."

Attached to the motion was the supporting declaration of Debtors' attorney, John G. Downing. Downing declared that at the time the Valuation Motion was filed (1) the only deed of trust in his file was the 2002 Deed of Trust; (2) this deed of trust was reconveyed on September 15, 2004; and (3) Wells had not filed its POC until after the Valuation Motion was decided. Based on these facts, Downing contended that the Valuation Order contained a clerical mistake and should be corrected pursuant to Civil Rule 60(a) to reference the 2004 Deed of Trust and the requested judgment should reflect that lien. Also attached to the motion was the 2002 Deed of Trust and the reconveyance of that deed of trust recorded on September 15, 2004.

On February 13, 2015, Debtors served a corrected notice of hearing on Wells in connection with the Motion to Correct and their request for judgment. This notice was served on Wells by regular mail at the Iowa Address and by certified mail to Stanley Stroup at the South Dakota Address and Wells at the Sacramento Address. Wells did not respond.

On March 12, 2015, the bankruptcy court heard the matter. Wells did not appear at the hearing. Downing argued that Wells received notice and that it was effective because the Valuation Motion referenced the loan ending in 6995, which was the correct loan number. Downing further argued that Wells had notice of their Motion to Correct and request for judgment voiding lien and, therefore, Debtors were entitled to entry of default against Wells under Civil Rule 55(a), made applicable to contested matters by Rule 9014(c).

The bankruptcy court denied the motion on several grounds.

-9-

First, referring to Rule 60(b)(1), the court found that the motion was untimely since motions under that subsection had to be brought within a year. Second, the court did not find there was a mistake or excusable neglect as the original Valuation Motion and Valuation Order clearly stated that Debtors were seeking to avoid a junior lien that was recorded on July 3, 2002, and described a document number recorded in 2002. The bankruptcy court stated that there was no such lien in existence at that time so there was no basis for Wells to object to the Valuation Motion, and they did not.

The court also denied Debtors' motion and request for judgment on due process grounds. The court found that although the notice to Wells may have had the correct loan number for a loan they had pending, this was not sufficient notice when other information was incorrect. The bankruptcy court further opined that the information was publicly available at the time and could have been obtained, but it was not.

The bankruptcy court entered the order denying Debtors' Motion to Correct and request for judgment voiding lien on March 12, 2015. Debtors filed a timely notice of appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

Did the bankruptcy court err by finding that Wells had inadequate notice of Debtors' intent to value their Property for the purpose of treating Wells' claim as wholly unsecured and

-10-

stripping its lien after completing their chapter 13 plan?

Did the bankruptcy court abuse its discretion by denying Debtors' Motion to Correct under Civil Rule 60(a)?

## IV.   STANDARDS OF REVIEW

Whether adequate due process notice was given in any particular instance is a mixed question of law and fact that we review de novo.  Berry v. U.S. Trustee (In re Sustaita), 438 B.R. 198, 207 (9th Cir. BAP 2010).  However, to the extent an issue within the mixed question can be identified as solely a question of fact, it is subject to a clearly erroneous standard of review.  See Rose v. United States, 905 F.2d 1257, 1259 (9th Cir. 1990).

A bankruptcy court's denial of a motion under Civil Rule 60 is reviewed for an abuse of discretion.  Lemoge v. United States, 587 F.3d 1188, 1191-92 (9th Cir. 2009).

Review for abuse of discretion has two parts.  First, "we determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested."  U.S. v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).  If so, we then determine under the clearly erroneous standard whether the bankruptcy court's factual findings and its application of the facts to the relevant law were "(1) illogical; (2) implausible; or (3) without support in inferences that may be drawn from the facts in the record."  Id. at 1262.

## V.   DISCUSSION

**A.   Due Process**

The bankruptcy court concluded that to modify the Valuation

-11-

Order to pertain to the 2004 Deed of Trust would deny Wells due process. We disagree with this conclusion because due process was served. "The standard for what amounts to constitutionally adequate notice, [], is fairly low; it's 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection.'" Espinosa v. United Student Aid Funds, Inc., 553 F.3d 1193, 1202 (9th Cir. 2008) (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314-15, (1950)), aff'd, 559 U.S. 260 (2010).

Here, the key inquiry is in connection with the second part of the Mullane test which requires that the notice provided must afford the affected party an opportunity to present objections. Mullane, 339 U.S. at 314. While Mullane revolved principally around the constitutional adequacy of service by publication, the court stated that "[t]he notice must be of such nature as reasonably to convey the required information." Id.; see also Fogel v. Zell, 221 F.3d 955, 962 (7th Cir. 2000) ("If notice is unclear, the fact that it was received will not make it adequate.").

In the notice accompanying their Valuation Motion, Debtors identified the address of their Property and stated that its value was less than owed on the first deed of trust. Debtors also identified (1) Wells as the creditor whose lien in the second position was affected; (2) the loan number associated with its security; and (3) the amount of the loan. Both the loan number and the amount of the loan were identical to that identified by Wells in its POC which was based on the 2004 Deed

-12-

of Trust. This information was sufficient to allow Wells to identify the loan in question as the one secured by its current deed of trust and that the basis for treating Wells as wholly unsecured was the lack of equity in the Property and § 506(a).[5] In sum, the notice reasonably conveyed the required information under the standards set forth in Mullane and thus satisfied Wells' due process rights.

Further, the record shows that Wells was served with Debtors' plan and amended plans which clearly stated the proposed treatment of Wells' claim was as an unsecured creditor. The plans referred to Debtors' pending Valuation Motion in connection with Wells' second deed of trust and loan number ending in 6955. Again, this was sufficient to put Wells on notice that its in rem rights associated with its current deed of trust in the second position would be affected. Wells had notice of its treatment under Debtors' plan and amended plans and yet failed to timely object.

There is no indication in the record that Wells expected direct payments from Debtors to satisfy its secured debt over the long term. Indeed, the confirmed plan did not provide for any such payments. In accordance with the terms of the

---

[5] Section 506(a) governs the amount and treatment of secured claims. In a reorganization case, § 506 is relevant regarding what claims get paid through the plan, "and the would-be secured creditor whose claim is allowed only as unsecured gets paid as an unsecured creditor." Laskin v. First Nat'l Bank of Keystone (In re Laskin), 222 B.R. 872, 876 (9th Cir. BAP 1998). Rule 3012 implements the substantive rights of § 506(a). It provides that the bankruptcy court may determine the value of a secured claim, upon motion of a party in interest, and after hearing on notice to the holder of the secured claim.

confirmed plan, the chapter 13 trustee made payments to Wells over forty-two months on the basis that its claim was unsecured. The plan is preclusive as to the treatment of Wells' claim. <u>See</u> <u>Lomas Mortgage USA v. Wiese</u>, 980 F.2d 1279, 1284 (9th Cir. 1992), <u>vacated on other grounds</u>, 508 U.S. 958 (1993) ("An order confirming a Chapter 13 plan is res judicata as to all justiciable issues which were or could have been decided at the confirmation hearing."); <u>see also</u> <u>Fietz v. Great W. Sav.</u> <u>(In re Fietz)</u>, 852 F.2d 455, 458 (9th Cir. 1988) ("Once a Chapter 13 plan is confirmed, all of the property of the estate vests in the debtor and creditors are precluded from asserting any other interest than that provided for them in the confirmed plan.").

Under these circumstances, we conclude that Wells had adequate notice regarding the stripping of its current deed of trust recorded in 2004 and Debtors' proposed treatment of its wholly unsecured claim in their confirmed FAP. It is not possible to tell from the record whether the bankruptcy court applied the legal standards for notice and due process set forth in <u>Mullane</u>. Assuming that it did not, under a de novo review, the court's ruling that Wells had inadequate notice was in error. Moreover, to the extent the finding of inadequate notice is purely one of fact, it is not supported by the record and thus is clearly erroneous.

**B. Civil Rule 60(a): Clerical Mistakes, Oversights and Omissions**

In their Motion to Correct, Debtors requested the bankruptcy court to correct the Valuation Order based on Civil

-14-

Rule 60(a), incorporated by Rule 9024.[6] Under Civil Rule 60(a), a bankruptcy court may "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."  Relief under Civil Rule 60(a) is not limited to clerical mistakes committed only by the clerk; the rule applies to mistakes by the court, the parties, and the jury as well.  Icho v. Hammer, 434 F.Appx. 588, 2001 WL 1979163, at *1 (9th Cir. May 23, 2011 (citing Day v. McDonough, 547 U.S. 198, 210-11 (2006)); see also Warner v. Bay St. Louis, 526 F.2d 1211, 1212 (5th Cir. 1976) (mistakes correctable by [Civil] Rule 60(a) are "not necessarily made by the clerk"); Pattiz v. Schwartz, 386 F.2d 300, 303 (8th Cir. 1968) (mistakes by parties correctable by [Civil] Rule 60(a)).  Corrections pursuant to Civil Rule 60(a) have no time limit.

In determining whether a mistake may be corrected under Civil Rule 60(a), the Ninth Circuit focuses on what the court originally intended to do.  Tattersalls, Ltd. v. Dehaven, 745 F.3d 1294, 1297 (9th Cir. 2014).  Further, Civil Rule 60(a) covers more than the "quintessential clerical error" such as where the court errs in transcribing the judgment or makes a computational mistake.  See Korea Exchange Bank v. Hanil Bank, Ltd. (In re Jee),  799 F.2d 532 (9th Cir. 1986) (Civil Rule 60(a) used to amend a prior dismissal order where the record and the recollection of the judge who entered the order indicated that the dismissal was intended to be without

---

[6] In denying the motion, the court referenced Civil Rule 60(b), not 60(a).

prejudice); <u>Jones & Guerrero Co. v. Sealift Pac.</u>, 650 F.2d 1072 (9th Cir. 1981) (Civil Rule 60(a) used to correct a blanket order dismissing twenty-two diversity cases, where the court intended to remand one of those cases — the only one not originally filed in federal court — to territorial court); <u>Robi v. Five Platters, Inc.</u>, 918 F.2d 1439, 1444-45 (9th Cir. 1990) (uncorrected judgment "ordered, among other things, that [a party's trademark] be canceled," but it "failed to identify the particular trademark to be canceled or to include any trademark registration numbers or dates of issuance."  The United States Patent and Trademark Office was unable to identify the trademarks to be cancelled, the district court amended its judgment under Civil Rule 60(a) to identify the trademarks with more particularity.); <u>Garamendi v. Henin</u>, 683 F.3d 1069, 1180-81 (9th Cir. 2012) (Civil Rule 60(a) used to clarify a judgment that could not be domesticated in a foreign country because its reasoning was not sufficiently detailed).

In short, the Ninth Circuit has construed Civil Rule 60(a) broadly, holding that the "[r]ule 'allows a court to clarify a judgment in order to correct a failure to memorialize part of its decision, to reflect the necessary implications of the original order, to ensure that the court's purpose is fully implemented, or to permit enforcement." <u>Garmendi</u>, 683 F.3d at 1079.

We thus conclude that the bankruptcy court erred by not considering and applying Civil Rule 60(a) to correct the error in the Valuation Order.  We provide our analysis on the applicability of Civil Rule 60(a) with the hope that such

-16-

guidance might be utilized by Debtors and the bankruptcy court on remand. McDonald v. Sperna (In re Sperna), 173 B.R. 654 (9th Cir. BAP 1994) (providing guidance to the bankruptcy court on remand); Sapper v. Lenco Blade, Inc., 704 F.2d 1069, 1072 (9th Cir. 1983) (addressing a question to provide guidance on remand).

As noted above, the error can be made by a party and here it appears to have been a mistake arising from oversight on the part of Debtors and their counsel. Furthermore, the correction proposed by Debtors would not change the Valuation Order's operative substantive terms or result in a different outcome — the value of Debtors' Property remains the same and Wells' second deed of trust (which had been correctly identified by loan number and amount) was wholly unsecured due to that value. Wells suffers no prejudice because the relief sought by Debtors is **the very same relief** that would have been granted in May 2012 in connection with the Valuation Order, but for the unfortunate oversight of Debtors regarding the date of Wells' deed of trust. Moreover, Wells received payments as an unsecured creditor over the course of Debtors' plan. In addition, the use of Civil Rule 60(a) is not precluded by the fact that Debtors submitted new evidence relating to the lien in question. Tattersalls, 745 F.3d at 1299 (permitting new evidence relating to loss of value) (citing Robert Lewis Rosen Assocs., Ltd. v. Webb, 473 F.3d 498, 504-06 (2d Cir. 2007) (permitting the admission of new evidence to correct a judgment)). Finally, the proposed correction would not reflect any change in reasoning that led the bankruptcy court to enter the Valuation Order in the first

place.  Accordingly, modifying the Valuation Order to reflect the 2004 Deed of Trust is warranted as there are no obstacles to a proper application of Civil Rule 60(a).

**C.    Civil Rule 60(b)(1):  Mistake or Excusable Neglect**

Civil Rule 60(b)(1) permits a court to reopen judgments for reasons of "mistake, inadvertence, surprise, or excusable neglect, but only on motion made within one year of the judgment."  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 393 (1993).  If a Civil Rule 60(b)(1) motion is untimely, the bankruptcy court lacks jurisdiction to consider the merits of the motion.  Nevitt v. United States, 886 F.2d 1187, 1188 (9th Cir. 1989).  The bankruptcy court correctly concluded that to the extent Debtors relied upon Civil Rule 60(b)(1) to correct the Valuation Order, their motion was untimely.

## VI.  CONCLUSION

For the reasons stated below, we REVERSE the bankruptcy court's determination that Wells' due process rights were violated, VACATE the order denying the Motion to Correct, and REMAND this matter to the bankruptcy court for further proceedings consistent with this memorandum.